THE DRUID ·PARK HEIGHTS COMPANY of Baltimore
City *vs.* MOSES OETTINGER.

*Construction of a Will—Trusts—Powers attaching to the
Office of Trustee—Jurisdiction of a Court of Equity to
appoint a Trustee to execute the Trusts of· a Will—Ratifica-
tion of Trustee's Sale.*

The intention of E. G. a testator, as shown by his will, was to pro-
vide a fund of $20,000 to produce an annuity for the benefit of his
wife, so long as she might live; which fund and the proceeds
thereof he desired effectually to protect from the control of any
future husband she might marry, and to secure from liability for
the debts of such possible husband. That fund, it appears from
his will, did not exist in tangible form, but had to be raised by
sales of certain portions of his estate, and for that reason he gave
to G. and K. named as executors and trustees, and to the survivor
of them, and the heirs, executors and administrators of the sur-
vivor, a power of sale for the purpose of raising this fund and
praying certain pecuniary legacies. The next object of his bounty
was his daughter, and for her he designed all the residue of his
estate, including the fund set apart for· his wife after her death to
go, after paying the legacies, for life, free from the control or debts
of any future husband the daughter might have, and then to her
children. To accomplish these objects the testator created a trust,
and for the purpose of making the estate productive, he gave to
G. and K., trustees, or the survivor of them, or the heirs, executors
or administrators of the survivor, the power of selling at public or
private sale, or leasing, as might be most advantageous in their
judgment to the parties in interest. G. and K. gave bond as
executors; and two years afterwards, K's letters were revoked, and
he afterwards renounced all participation in the trusts of the will.
G. afterwards died, leaving an infant son as his heir-at-law. His
administrators declined to execute the trusts of the will, and they
paid over to M., administrator *d. b. n.* of E. G., the funds of that
estate which came to their hands as administrators of G. A bill
was filed in the Circuit Court for Baltimore County, for the appoint-
ment of a trustee to execute the trusts created by the will, alleging
the minority of G's son, the heir-at-law, and the necessity for the

Druid Park Heights Co. *vs.* Oettinger.

appointment of a new trustee to secure to the several persons interested, the enjoyment of their rights. All parties in interest *in esse* were brought in. A decree was passed in the above cause, appointing M., trustee, "instead of G., deceased, with full and ample power and authority to execute the several trusts created in and by the last will of E. G., deceased, and directing the said M., as such trustee, to seek a suitable mode of investment for the said $20,000 in said will and bill of complaint mentioned, and report the same for the consideration and approval of the Court, and also to proceed to the execution of his other duties in the premises." M. gave bond as prescribed by the decree. He afterwards sold at private sale to one S., the land mentioned in E. G's will. The sale was reported to the Court, and was ratified and confirmed by it. The appellant purchased of S. In an action to recover the purchase money for part of this land sold by the appellant to the appellee, who declined to pay on the alleged ground of want of title in the appellant, it was HELD:

1st. That the intention of E. G's will should be carried out, unless prevented by some imperative rule of law, and that E. G. could not have intended, that the trusts created by his will should fail by reason of the death, refusal or incapacity of any of the persons coming within the express terms he had used to designate the trustees.

2nd. That a Court of Equity had power to prevent the imperative trusts created by the will from failing, for want of a trustee to discharge the duties; and that the authority given to the trustees to sell at public or private sale, was a power attaching to the office which the beneficiaries could insist on being executed; that it did not appear from the objects and scope of the will, that the testator intended to repose especial confidence in the sense of personal trust, because of especial fitness, beyond the persons designated by name; that the language used by the testator was intended only to create a continuing trust; and that the omission of the word "assigns" does not conflict with the idea, that the discretion respecting the sale and the manner of it, was intended to be attached to the office.

3rd. That the Court of Equity having the jurisdiction to appoint M. trustee, to execute the trusts of the will, with the discretion respecting the sale of the land, the language of the decree is sufficiently broad to cover all the trusts and powers created by the will.

4th. That the power of sale contained in the will, which attached to the office of trustee, passed by the terms of the decree to M. trustee; and that the ratification of the sale by the Court perfected the purchaser's title.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

. The cause was argued before BARTOL, C. J., MILLER, ALVEY and IRVING, J.

*L. P. D. Newman* and *William A. Fisher,* for the appellant.

. The appellant maintains as follows:

1. The Circuit Court for Baltimore County had jurisdiction of the persons interested in the property, which passed under the will of Edward Griffith, and of the subject. Its decree, unreversed, binds all parties, and said decree settles that Myers is to execute all the trusts of the will in as ample a manner as the trustees named in the will could have done. The efficiency of said decree, and the power of sale, were recognized in the case of *Suter, Trustee vs. Ives, &c.,* 47 *Md.,* 536.

As to the construction of the language of the decree, see *Warburton vs. Sandys,* 14 *Simons,* 623 ; 2 *Perry, sec.* 505 ; *Lewin on Trust,* 438 ; 10 *Peters,* 565 ; 3 *Binney,* 73.

Even if an appeal should subsequently be allowed from the decree, and the decree reversed, the validity of the sale made, while the decree remained unreversed, would not be affected. *Barney vs. Patterson,* 6 *H. & J.,* 182.

The ratification of sale concluded the parties to the cause. *Cockey vs. Cole,* 28 *Md.,* 284–5 ; *Schley's Lessee vs. Mayor, &c.,* 29 *Md.,* 46–7.

2. It cannot be disputed, that the Court possessed jurisdiction to appoint a new trustee. If it should be conceded,

that he derived no power to make sale, as one of the trusts to be executed by virtue of the decree, nevertheless, the mere substitution conferred upon him the power to make sales as fully as though he had been one of the original trustees. The power under the will is not of a character to be limited to the particular individuals named in the will. "It is annexed to the office of trustee, and intended to form an integral part of it." If the Court can gather from the will that it was not the general intention of the will to limit the power to the named trustees, and that such a limitation would be inimical to the interests of the *cestuis que trust*, it will construe it as giving the power also to a substituted trustee.

The question is one of intention. That there was no selection of the trustees named in the will only, is apparent, because the power is given in terms to their heirs and administrators, an unknown class. 2 *Perry on Trusts*, secs. 499, 505, 503, 508; *Lewin on Trusts*, 437–8; 1 *Sugden on Powers*, 141, '2, 144; *Peter vs. Beaverly*, 10 *Peters' Rep.*, 564, '6; *Taylor vs. Berham*, 5 *Howard*, 268; *Sebach's Lessee vs. Smith*, 3 *Binney*, 73; *Loring vs. Marsh*, 6 *Wallace*, 352–5.

*M. R. Walter*, for the appellee.

The contention of this appellee is, that the decree, appointing Myers trustee, did not and could not vest him with the discretionary powers of sale conferred by the testator upon the trustees named in the will. Discretionary powers can be exercised only by those on whom they are conferred. A power to sell is a discretionary power. 2 *Perry on Trusts*, 473, 496, 499, 507–8; *Hill on Trustees*, 480, top p. 760.

In this will, the power is limited to the persons named, their heirs, executors and administrators, and can, therefore, not be exercised by the assignee. Where the Court appoints a new trustee, it cannot communicate arbitrary

or discretionary powers to him, unless the instrument confers such powers upon the trustee for the time being, or they are annexed to the office; but if a power is given to a trustee, his heirs or assigns, and a new trustee is appointed, and a vesting order made,. the new trustee may execute the power under the word "assigns." 2 *Perry on Trusts*, 494, 503; *Harris vs. Rucker*, 13 *B. Monroe*, 565.

When the Court appoints a new trustee, the estate with the trust attached will be in the trustee so appointed, but the powers (if discretionary) will be extinct. *Hill on Trustees*, 316; 1 *Sugden on Powers*, sec. 73, [150, *top*] 211; *Newman vs. Warner*, 1 *Sim.*, (*N. S.*,) 457; *Bradford vs. Belfield*, 2 *Sim.*, 264; *Cook vs. Crawford*, 13 *Sim.*, 96; *Cole vs. Wade*, 16 *Ves.*, 27.

IRVING, J., delivered the opinion of the Court.

The appellant sued the appellee for the purchase money of five lots of ground, which are described in the declaration. Pleas of never indebted, and never promised as alleged, were interposed. · The case was submitted to the Court, without the intervention of a jury, upon an agreed statement of facts, which raises the question of title, the alleged want of which on the part of the appellant, the vendor, forms the appellee's whole defence against the claim for purchase money. The facts are undisputed. Edward Griffith died seized of the property in question. By his will, duly executed and admitted to probate, he first devises and bequeaths to his "friends John J. Griffith and Charles B. Keyworth, and the survivor of them, and the heirs, executors and administrators of the survivor, the sum of twenty thousand dollars, in trust and special confidence nevertheless, and to and for the uses, objects and purposes, and under and subject to the limitations and restrictions hereinafter mentioned, expressed and declared of and concerning the same, and

for no other use, trust or purpose whatever." Then follows provisions for investment for the use of his wife, Barbara Griffith, during her life, for her sole and separate use, free from the control of any future husband she might have, and making the investments, at her death, a part of the residuum of his estate, and for distribution accordingly. After declaring this provision for his wife to be in lieu of dower, he next makes some absolute money bequests to his sister-in-law and her children. The next provision creates another trust: "I give to my friends, John J. Griffith and Charles B. Keyworth, and the survivor of them, and the heirs, executors and administrators of the survivor, the sum of one thousand dollars, in trust, that the same be placed out at interest, on good mortgage or other safe security, or vested in ground rents, loans or stocks, or other productive property, and that my old friend, Stephen Hale, be permitted and suffered, during the term of his natural life, to receive, take and apply the interest and profits arising therefrom," &c., and after providing for the payment of his funeral expenses, gives the fund proper to his daughter. He next gives some absolute pecuniary legacies. Then follows the clause which gives rise to this controversy: " All the rest, residue and remainder of my estate, real, personal and mixed, wherever situate or being, without reservation or exception, inclusive of the said sum of twenty thousand dollars hereinbefore set apart for the benefit of my beloved wife, for life, or the property or estate in which the same shall be invested, I give, devise and bequeath to my said friends, John J. Griffith and Charles B. Keyworth, and the survivor of them, and the heirs, executors and administrators of the survivor, in trust and special confidence nevertheless, and to and for the uses, objects and purposes, and under and subject to the powers, limitations and restrictions hereinafter mentioned, expressed and declared of and concerning the same, and for no other

use, trust or purpose whatsoever, that is to say, in trust
for the sole and separate use of my daughter, Mary
Fletcher Griffith, during the term of her natural life, so
that she be permitted and suffered during that period to
enjoy the same, and the rents, issues, incomes and profits
thereof, to take, receive and apply to her own separate
use and benefit; and so that neither the said estate and
property, nor any part thereof, nor the rents, issues, pro-
fits, income or proceeds of the same shall in any manner
be liable or subject to the control, power or disposal of
any future husband she may have, or be in anywise
answerable for the payment of his debts, or bound for the
fulfilment of his contracts or engagements; and the re-
ceipts of the said Mary Fletcher Griffith, alone, shall be
good and effectual acquittances and discharges for such
rents, issues, incomes and profits ; and from and immedi-
ately after the death of my said daughter, Mary Fletcher
Griffith, then in trust, that all the said estate and prop-
erty embraced in this section of my will shall go to and
become the property of the child or children my said
daughter, Mary Fletcher Griffith, may hereafter have, his,
her or their heirs, executors, administrators or assigns
absolutely; if more than one, as tenants in common
equally. The issue of any deceased child of the said Mary
Fletcher Griffith, if any such issue then should be living,
to take and have the part or proportion to which the
parent of such issue would, if living, be entitled; and in
case my said daughter, Mary Fletcher Griffith, shall de-
part this life without having a child or children, or de-
scendant or descendants of the same living at the time of
her death, then in trust for the use and benefit of such
person or persons, for such uses and purposes as the said
Mary Fletcher Griffith, whether sole or covert, shall or
may, by any instrument of writing in the nature of or
purporting to be the last will and testament, signed in the
presence of and witnessed by three or more respectable

persons, name, direct, limit or appoint, and if no such nomination, limitation or appointment shall be made, and the said Mary Fletcher Griffith shall depart this life without leaving a child or children, or descendants of the same living at the time of her death, then in trust, that all the said estate and property embraced in this section or clause of my will, shall go to and become the property of such person or persons as would, by the now existing laws of the State of Maryland, be entitled to take an estate in fee simple in lands by descent from her. And in relation to my property or estate which either my said wife, Barbara Griffith, or my daughter, Mary Fletcher Griffith, may be entitled to under this will, other than the annual income or profits thereof, or which may have been devised in trust for them, or either of them, in this will, I hereby authorize and empower my said trustees, John J. Griffith and Charles B. Keyworth, or the survivor of them, or the heirs, executors or administrators of the survivor of them, to sell or lease for such term or terms of years, renewable or not renewable, as they may think proper, the whole or any part thereof, either at public or private sale, if they shall deem such sale or lease beneficial or advantageous to the parties interested." Then follow directions to the trustees to invest the proceeds, subject to the uses, purposes and limitations declared in his will, in such way as they may find most advantageous, and to hold for the purposes declared. Then comes a provision in the following language, to wit: "And I hereby authorize and empower my executors and trustees, and the survivor of them, and the heirs, executors and administrators of the survivor, either in their capacity as executors or trustees, or both capacities, if necessary, to sell and dispose of any part or parts of my estate, real, personal and mixed, either at public or private sale, as to them, or him, shall seem most advantageous for the purpose of raising the sum of twenty thousand

dollars, hereinbefore devised in trust for the benefit of my said beloved wife for life, and for the purpose of raising the amount necessary for the payment of my debts and the specific devises, bequests and legacies hereinbefore mentioned in this, my will, and to make, execute and deliver, in due form of law, necessary deeds, conveyances and assignments for the estate and property, so sold, to the purchaser or purchasers thereof; and I do, also, hereby give to and vest in my executors and trustees and the survivor of them, and the heirs, executors and administrators of the survivor, full power and authority, and I expressly order and direct that they, or he, either in their capacity as executors or trustees, or in both capacities, if necessary, shall complete, perfect, fulfil and comply with all contracts which I have already, or that I may previous to my death enter into or make and leave unaccomplished, relative to any part or parts of my estate, as for the sale, leasing or otherwise disposing of the same, and to make, execute and deliver, in due form of law, all deeds, conveyances, leases, releases of mortgage and all other instruments of writing whatsoever, connected with such contracts or engagements, or otherwise incident and necessary to the settlement of my estate, or leasing, settling or disposing of the same, or any part thereof, under this, my will, as full and effectually as I, myself, might or could do; and it is further my will, and I do direct, that my executors shall not be compelled to force any sale of my property for the purpose of paying off any of my bequests, but direct that they shall have five years to pay off the same, if they think the delay would be advantageous to my estate; and it is my earnest wish and desire, that there should be no litigation whatsoever amongst my devisees or legatees touching this my will, or any devise or bequests contained therein, being satisfied that I have done justice to them all; and in case any of my devisees should make any claim for, on account of my late brother,

Stephen Griffith, he, she or they, so claiming shall forfeit all right, title, interest and benefit in and to the estate and property devised to him, her or them, in and by this my last will and testament." And, lastly, he constitutes John J. Griffith and Charles B. Keyworth to be his executors.

John J. Griffith and Chas. B. Keyworth bonded as executors, and two years afterwards the letters of Keyworth were revoked for a want of counter security, and he afterwards renounced all participation in the trusts of the will. John J. Griffith afterwards died leaving a son as his heir-at-law who was a minor. His administrators declined to execute the trusts of the said will, and they paid over to an administrator *de bonis non* of Edward Griffith, the funds of that estate which came to their hands as administrators of John J. Griffith. That administrator *de bonis non* was Andrew J. Myers. A bill was filed in the Circuit Court for Baltimore County, for the appointment of a trustee to execute the trusts created by the will of Edward Griffith, alleging the minority of the heir-at-law of John J. Griffith the trustee who had died, and the necessity for a new trustee to be appointed to secure to the several persons interested the enjoyment of their rights. It is admitted, that all parties in interest *in esse* were brought in. That proceeding culminated in a decree appointing Andrew J. Myers trustee, "instead of the said John J. Griffith, deceased, with full and ample power and authority to execute the several trusts created in and by the last will and testament of the said Edward Griffith, deceased; and the said Andrew J. Myers, is hereby directed to seek a suitable mode of investment for the said sum of twenty thousand dollars in said will and the bill of complaint mentioned, and report the same for the consideration and approval of this Court, and also to proceed to the execution of his other duties in the premises," &c. Subsequent to said decree, Andrew J. Myers, the trustee

appointed, gave bond in the penalty of one hundred and fifty thousand dollars, as he was directed by the decree. He afterwards sold, at private sale, to one Sauerberg, the land mentioned in the will of Edward Griffith, being in the main unimproved property in the neighborhood of Druid Hill Park for $90,000, and it is admitted that the land would not by leasing, have produced an income at all commensurate with its value. This sale was reported to the Court and was ratified and confirmed by it. The appellants purchased of Sauerberg. The sole question in the cause is, was this sale by Andrew J. Myers properly authorized and valid. The appellee contends, that the will of Edward Griffith created a special and discretionary trust in the persons he names as trustees, and the heirs, executors and administrators of the survivor, and that the decree of the Court did not give to Myers, the new trustee, the power to make the sale, and could not do it—that the estate and powers passed irrevocably, under the circumstances stated by the will and the common law to the son of John J. Griffith, the acting trustee as his heir-at-law, and that the sale made by Myers was without authority and void.

The appellants on the other hand insist, that the intent of the testator is apparent to create trusts, without intending that the persons named should, at all events and at all hazards, execute them to the exclusion of all others, or of the control of the Courts for their protection and preservation; and that it was within the power of the Court of equity when the trust would fail for the want of a competent person to execute it, coming within the description and designation of the will, to appoint a trustee to preserve and execute the trusts. And if it be conceded that there was a discretion reposed in the trustees named in the will, which could not be reposed in a trustee appointed by the Court, still the Court could order the sale, and could direct and approve the investment, and

having approved the sale which was made, it was doing a legitimate thing, and the sale is therefore good and valid; and the title of the purchaser cannot be questioned.

The first thing to be ascertained is, what did the testator intend to do, or to be done; for if that can be ascertained by considering the will as a whole, that intention must be carried out, unless some imperative rule of law will prevent. The first object in the mind of this testator was to provide a fund of twenty thousand dollars, to produce an annuity for the benefit of his wife, as long as she might live; which fund and the proceeds thereof he desired effectually to protect from the control of any future husband she might marry, and to secure from liability for the debts of such possible husband. That fund, it appears from his will, did not exist in tangible form, but had to be raised by sales of certain portions of his estate, and for that reason he gives the persons named as executors and trustees and the survivor, and the heirs, executors and administrators of the survivor the power of sale for the purpose of raising this fund and paying certain pecuniary legacies. The next object of his bounty was his daughter, and for her he designed all the residue of his estate, including the fund set apart for his wife, after her death, to go, after paying the legacies, for life, and then to her children. He discovers the same object here again, to protect what he gave his daughter from the control of any future husband she might have, and from his debts. To accomplish these objects he creates a trust; and for the purpose of making the estate productive he gives the trustees the power of selling and leasing, as might be most advantageous, in their judgment, to the parties. These were trusts the testator could not have intended to fail by reason of the death, refusal, or incapacity of any of the parties coming within the express terms which he has used to designate the trustees. The estate needed to

be watched, managed, changed, sold or leased, so as to make it productive, and the testator was endeavoring to provide, so that in no event should there be wanting a trustee or trustees who could perform the duties necessary to produce that result. The multiplicity of words and terms he has used has produced the difficulty as to construction. It will be observed that in creating the trust fund of one thousand dollars, for the benefit of his friend Stephen Hale, during his life, and paying his funeral expenses after his death, he has used the same language in designating the trustees for the purpose of supporting the trust and executing it, that he has with reference to the trusts created for the benefit of his wife and daughter and her children. Now there was a trust, imperative in its character, and which he intended should be executed at all events whether the trustees he named failed to accept the trust or not; and it aids in getting the intent the testator had throughout the will. The exigencies of this trust might require the interposition of the Court to execute it, and it is very clear that a Court of equity would have power to prevent this provision failing, for want of a trustee to discharge the duties. By the last clause of the will sales were authorized to meet the legacies, and to raise the twenty thousand dollar fund, and there he uses the same language to indicate the duty he lays on the trustees, and the discretion he gives them as to a public or private sale. That was clearly an imperative trust, which the Court would compel to be executed, and if the trustees named refused to execute it the Court would appoint one or more to sell and to execute the trusts fully. To that extent certainly it was a power attaching to the office, which the beneficiaries could insist on having executed. It was necessary to the successful carrying out the testator's will. It does not appear from the objects and scope of the will that the testator intended reposing especial confidence, in the sense of personal trust because of especial fitness,

beyond the persons designated by name.   In the language
used to designate their successors, in the event of death,
such phrases are employed as would admit utter strangers
to the testator to the execution of the trusts, and it might
be persons who had no interest in him or his beneficiaries.
The administrators of the trustees named might succeed
to the trust.   They might be the creditors of the trustees,
or any stranger who might secure the appointment.
There is strong reason therefore, for regarding this lan-
guage as intended only to create a continuing trust.
True, the word "assigns" nowhere appears, and its omis-
sion may prevent the trustees from assigning the estate or
their powers and trusts, as was the case in *Cook vs. Craw-
ford*, 13 *Simons*, which was relied on by appellee's counsel
to sustain his view ; but it does not exclude the idea that
the testator was attempting to create a continuing trust,
to the trustee for the execution of which, whoever he
might be, he was giving discretion as to the management
thereof, in the particulars designated.   The omission of
"assigns" does not conflict with the idea that the discre-
tion respecting the sale and manner of it, was intended to
be attached to the office.   In *Loring vs. Marsh*, 6 *Wallace*,
352, the Supreme Court held, that the word "successors"
superadded to the trustees named, to whom a discretion is
given to choose the charities to receive the testator's bounty,
made it clear the testator was not reposing especial confi-
dence in the trustees first named, but gave a power
attached to the office.

Looking to the whole of this will and the objects in-
tended to be secured, we may well hold that this testator
intended that whoever might be the trustee to carry out
the provisions of his will, should have the power of sale,
or leasing his estate for the purpose of making it produc-
tive and available for the *cestuis que trust*.   In other words
that he was giving a discretionary power, which he de-
signed to attach to the office of trustee he was creating.

Still the question arises whether under the circumstances
of this case, the trustee, who has attempted the exercise
of a discretion given, as to the sale of the real estate, if
deemed necessary and beneficial, by the will, has done so
legitimately. If the Court had the jurisdiction or power
to appoint Andrew J. Myers, trustee, to execute the trusts
of the will with the discretion respecting the sale of the
real estate, it is very clear that the language of the decree
is sufficiently broad to cover all the trusts and powers created
by the will. The language of the decree has already been
quoted. The decree also provided for a bond and security
from the trustee for the faithful discharge of his duty,
which was given. It is admitted that all the parties neces-
sary to be made such, were parties to the proceeding in
which this decree was passed. The position of the appellees
that the bill was only instituted to secure a trustee for the
investment of the fund for Barbara Griffith, and that there-
fore the decree cannot be held to cover any thing more,
cannot be maintained. One of the allegations of the bill
is, that it will be for the benefit and advantage of the
infant children of Mrs. Fletcher and all the parties, that
the *entire* trust estate should be in the hands of a trustee
who should administer the same, subject to the supervi-
sion of a Court of equity, where all the parties would
enjoy the safeguard of a good bond and security; and
to this they had the right under section 138, Art. 16, of
the Code. Besides, the prayer of the bill covers the rest
and residue of the estate which was devised for the testa-
tor's daughter, as well as the twenty thousand dollars
devised for the use of his wife. It is true, that the object
of the bill was not in express words to procure a sale of
the land, but it was to procure a trustee's appointment
to carry out the trust, which, by reason of the minority of
the heir-at-law and the renunciation of the executors of
John J. Griffith, was without an active trustee to dis-
charge the duties; and if the power of sale attached to

the office of trustee; or if, without attaching to the office, the trust was under the control of the Court, and the Court could direct the sale without further proceeding; the appellant contends that the sale made and reported to the Court and approved by it, was valid.    There is, by this will, certainly no power given to the trustees to designate their own successors in office; and they have not attempted it; but the Court because of the renunciation of some, the death of another, and the minority of the heir to whom the legal title had descended, has interposed to appoint a trustee.    It is now the universal rule that those who take *under the trustee*, take subject to the trust, and must either execute it or convey to a new trustee to be appointed by the Court.    *Perry on Trusts, section* 346. Keyworth having renounced, there can be no doubt that the trust devolved on John J. Griffith, who accepted it. *Perry on Trusts, sec.* 502, and *Code, Art.* 93, *secs.* 381 *and* 382.    Upon the death of John J. Griffith, under our statute, *Code, Art.* 47, *sec.* 24, the legal estate descended, as at common law, to his oldest son, who is a minor about fifteen years old.

The general doctrine now is, that Courts of equity will not allow trusts to fail for the want of proper persons to execute them.    In this case the Court, on application, and it appearing that the infant son of the deceased trustee, on whom the estate and trust had devolved by law was unsuitable, and unable to execute the trust, all the parties in interest being before the Court, has appointed a new trustee.    The trust being imperative, the Court conformably with its power has taken charge of it and executed the trust by such appointment.    *Perry on Trusts, sec.* 249.    The infant being unable to convey, the decree does not so direct, but the decree devests the title of the infant heir, and vests it in the new trustee for the preservation of and purposes of the trust.    This brings us to inquire whether the decree conferred the power of sale on Myers, the newly ap-

pointed trustee; or if it did not, whether the ratification of the sale by the Court perfected the purchaser's title.

In this State as in almost all the United States, Courts of equity take the supervision of all trusts. "Relief has been decreed when the original trustees declined to act; or were desirous of being discharged; or had absconded; or were incapable of acting through age or infirmity; or could not discharge the trust through disagreement amongst themselves; or had been guilty of breaches of trust; or had become bankrupt." *Hill on Trustees*, 290, 291. The substituted trustee, when so appointed and qualified, sustains to the estate the character of trustee, as fully as if he had been originally appointed. *Cole vs. Wade*, 16. *Ves.*, 44. But where the discretionary powers are such as would *not belong to the Court because* of its *jurisdiction* over the subject-matter of the trust, independent of the authority of the will; as for instance, where the power is one of selecting the beneficiaries to enjoy the testator's bounty, the Court will not exercise it, and under the rules of law cannot confer such discretion on a trustee.

In such case the Court will execute it equitably, by equal distribution among those named. But it is otherwise where any body could properly exercise the discretion about the thing to be done; as for instance, the felling of timber, &c. *Hill on Trustees*, 317, and *Ambler's Reports*, 508. When the discretion applies to some ministerial act connected with the estate, such as felling timber, leasing or *selling* the land, such powers are much more under the control of Courts than those depending on the exercise of opinion and judgment. *Perry on Trusts*, 454, and cases there cited. In this case, the Court had undoubted jurisdiction over the trust. All the parties were brought in, and the whole trust was taken in charge by the Court. The trustee was directed to seek proper investments, and to report to the Court for its approval. A sale of the land for the purpose of accomplishing the objects contemplated,

was, by the will, directed to be made if advantageous to the parties.    The Court had unquestionable power to order the sale, and would have compelled the sale on its appearing necessary or beneficial.    If, in point of fact, the power of sale did not attach to the office of trustee created by the will, or by the decree substituted a trustee to carry out the trust, the Court could have authorized such a sale to be made, and would have ordered such a sale as that is represented to have been.    Under our statute, 1868, cphater 273, Courts of equity, with all the parties before them, who are interested, may decree the sale of any kind of an estate.    Here the parties were all before it, under the proceeding to secure a new trustee for the management of the *entire estate* or *trust.*    The bill, in seeking a new trustee for the management of the trust, necessarily contemplated the sale of the real estate if necessary to the trust, or advantageous to the *cestuis que trust.*    After the decree appointing the trustee on his *ex parte* application, the Court would have ordered a sale.    Without such application or previous order, the trustee has made a sale, and reported it to the Court, and the Court has ratified it after usual notice.    All intendments that can be made, ought to be made in favor of such sale so adopted by and ratified by the Court, for the security of the purchaser who has acted on such ratification.    There are occasions and circumstances when a trustee must exercise a discretion, though none is given by the instrument creating the *trust,* otherwise great loss may happen to the estate ; or a great opportunity may be lost by delay.    Hence the rule has been adopted in equity, that a trustee may do that without a special order, which the Court, on a case made, would order.    *Perry on Trusts, sec.* 476; *Hatton vs. Weems,* 12 *G. & J.,* 83.

There was certainly no injury to the *cestuis que trust* in ratifying such a sale as that was, or objections would have been interposed.    The trustee reported the sale to the

Druid Park Heights Co. *vs.* Oettinger.

Court, in the very cause wherein the decree appointing him was passed, for its approval; the usual *nisi* order was passed, giving notice thereof and opportunity for objection thereto, and no objection appearing, the Court finally ratified the sale. No appeal was taken from the decree, nor from this order of ratification. The title of the purchaser who has paid the purchase money for the property, ought to be upheld by every intendment that can be made in favor of the sale. The majority of the Court are of opinion, that the power of sale according to the intention of this testator in this will attached to the office of trustee, and passed by the terms of the decree to Andrew J. Myers; and, that if this were not so, the jurisdiction of the Court over the matter was full, and was sufficiently exercised to make the sale good.

The learned Court below rejected the prayers of the plaintiff, which asked the Court to rule that upon the proof he had valid title, and granted the prayer of the defendant that, "the plaintiff had offered no sufficient evidence to establish any authority in the trustee, Andrew J. Myers, to make the sale and execute the conveyances of the property mentioned in the evidence, and the plaintiff is not entitled to recover."

It follows from what we have said, that we think the Court erred in these rulings, and the judgment must be reversed and a new trial ordered.

*Judgment reversed, and*
*new trial ordered.*

(Decided 29th January, 1880.)


ALVEY, J., dissented.