THE SAFE DEPOSIT AND TRUST COMPANY OF BALTI-
MORE, Trustee,, and HENRY M. WALKER, &c. *vs.*
OTTO SUTRO.

*Construction of Will—Trustee—Discretionary power of*
*Sale—Exercise of Discretion by Substituted trustee.*

A testator, after various pecuniary and specific legacies, devised
all his property to two trustees, and the survivor of them, in
trust to make certain dispositions of the income until the young-
est of the children of the son of the testator, should attain the
age of twenty-one years, when the whole estate was to be di-
vided between said children. The will contained a power of sale
in the following words: "Thirteenth. I direct that my trustees

Safe Deposit and Trust Co. *vs.* Sutro.

hereinafter named shall have and exercise full discretion and authority to lease, sell, or dispose of any and all property of which I may die seized or possessed, either real or personal, as in their judgment may be deemed for the best interest of the trust estate in their hands. save and except," &c. "It is my will, and I hereby direct, that the discretion and authority vested in the trustees herein named, in and by the thirteenth item of this will, shall be possessed and exercised by the survivor of them, and the heirs, executors, and administrators of the survivor." Under proceedings in equity the trustees named in the will were removed, and a new trustee appointed in their place. The new trustee made sale of certain real property. constituting part of the trust estate, and reported the sale to the Court for its ratification. Upon exceptions filed to said sale, it was HELD:

That the discretionary power to sell and lease the property, constituting the trust estate, was a power annexed to the office of trustee and to be exercised by the trustees named in the will, and by the survivor, and the heirs, executors and administrators of the survivor ; and if they should renounce the trust or be removed, then to be exercised by any one who might be appointed in their place.

APPEAL from the Circuit Court, No. 2, of Baltimore City.

This appeal was taken from a *pro forma* decree of the Court below sustaining the exceptions of the appellee, as purchaser of certain real property in the proceedings mentioned, the ground of the exceptions being that the trustee could not give a good and valid title to the property sold. The case is stated in the opinion of the Court.

The cause was argued for the appellants before ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, FOWLER, McSHERRY, and BRISCOE, J., and submitted for the appellee, without brief.

*Edgar H. Gans,* (with whom was *B. Howard Haman,* on the brief,) for the appellants.

*Frank P. Clark,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

The question in this case is a narrow one, and one, too, in regard to which there cannot be, it seems to us, much difficulty. Noah Walker, the testator, died in 1874, seized and possessed of a large and valuable real and personal property, and leaving but one child, Patrick Henry Walker. After various pecuniary and specific legacies, the testator devises all his property and estate of every kind to Samuel H. Caughy and Noah W. Caughy, and the survivors of them, and the heirs, executors and administrators of the survivors, in trust that they should:

1st. Take from the income $10,000 per annum, and invest the same and the accumulation thereof, until the youngest child of Patrick Henry Walker shall attain the age of twenty-one years, when the whole of said principal sum and the increments thereof, shall constitute a part of the trust estate, to be divided among his grandchildren, as hereinafter stated.

2nd. To permit his son, Patrick Henry Walker, to use and occupy the farm on which the testator resided, free from all rent, taxes, and charges during his life.

3rd. To pay the net income from all the residue of the estate to Patrick Henry Walker during his life.

4th. To pay $6,000 per annum to Rosa B. Walker after the death of his son, Patrick Henry Walker, so long as she should remain his widow.

5th. After the death of Patrick Henry Walker, all the testator's property was to be held by Samuel H. Caughy and Noah W. Caughy, trustees, or the survivor of them, or the heirs, executors, or administrators of the survivor, in trust for the children of Patrick Henry Walker living at the time of his death or born thereafter, and the descendants of any deceased child, and for their support and maintenance, until the youngest child should arrive at twenty-one years of age, when the whole property, including the $10,000 and its accumulation, were to be divided between them.

The objects of the testator's bounty, it thus appears, were *his son,* his *son's widow,* and his *son's children and descendants.* None of them, however, were to get any absolute estate at the testator's death. The son was to have the farm, free from rent, and the income of the estate after taking therefrom $10,000 per annum, during his life, the son's widow $6000 per annum, and the son's children only so much of the income, as would be necessary for their maintenance. The trust thus created was to continue from the time of the testator's death until the youngest child of Patrick Henry Walker attained the age of twenty-one years.

The trustees named in the will continued to act as such till February 12, 1891, when upon the petition of the *cestuis que trust,* alleging a maladministration of the trust by said trustees, they were removed, and the appellant was appointed trustee in their place.

On November 25, 1891, the appellant, substituted trustee, under a power of sale conferred by the will of Noah Walker, and with the written consent of the *cestuis que trust,* sold a certain warehouse on Baltimore street at public sale to the appellee for ninety-six thousand dollars. The sale thus made was reported to the Court, and the reasons for making the sale are fully and at large set forth in the report. Accompanying the report are the affidavits of the real estate agents, to the effect that the price at which the property was sold, was the full market value of the property, and that the sale was to the benefit, interest, and advantage of all persons interested in the trust estate, and with the report the written consent of the *cestuis que trust* to the sale is also filed.

The clauses in the will, under which the appellant claims the power and authority to make said sale are as follows:

"Thirteenth: I direct that my trustees hereinafter named shall have and exercise full discretion and author-

ity to lease, sell, or dispose of any and all property of which I may die seized or possessed, either real or personal, as in their judgment may be deemed for the best interests of the trust estate in their hands, save and except the portions of said property hereinbefore bequeathed, or which shall be hereinafter excepted in the next clause of this will.''

''It is my will, and I hereby direct, that the discretion and authority vested in the trustees herein named, in and by the thirteenth item of this will shall be possessed and exercised by the survivor of them, and the heirs, executors, and administrators of the survivor.''

The power thus conferred is in a certain sense, no doubt, a *discretionary power*, for it is a power to sell, lease, or dispose of any and all of the trust property, if the trustees, in their judgment, shall deem it best for the interest of the trust estate.    But there is a broad distinction between a discretionory power, ministerial in its character, and connected with the management of the trust estate, such as the power to sell, or lease, and a power *personal in its character*, and to be exercised entirely as a matter of *personal judgment,* as where the discretion is left to trustees to make or withhold a gift, or consent to a marriage.    And the question here is whether this discretionary power to sell and lease the trust property is a *personal power* conferred on the donees, by reason of some special confidence reposed in them by the testator, and to be exercised by them, and by them alone, or whether it is a power *annexed to the office of trustee,* and, as such, to be exercised by any one who may be appointed to discharge the duties of the trust.    It is, after all, a question of intention, to be ascertained from a fair construction of the whole will, and the nature and objects of the trust thereby created. If the question depended solely upon the construction of the thirteenth item, there might be some ground for

the contention, that it was a personal power to be exercised by the trustees therein named, for it is a power to be exercised by them in their discretion, and no provivion is made for its exercise by any other person or persons. But, as if to exclude such a construction as this, the testator, in a subsequent clause of his will, provides in express terms, that this power shall and may be exercised, not only by the trustees themselves and the survivor, but also by the heirs, executors, and administrators of the survivor. Now, the testator could not possibly know who might be the heirs, executors, and administrators of the surviving trustee, and it cannot be said that the power thus conferred on them was by reason of special confidence reposed in them by the testator. One thing is certain, the testator meant that the trusts created by the will should continue, under any and all circumstances, until the youngest child of his son, Patrick Henry Walker, should attain the age of twenty-one years. The estate was a large and valuable one, and it might be to the interest and advantage of the beneficiaries under the will, that portions of it should be sold during the continuance of the trust, and the proceeds of sale be invested in more profitable securities. But if the power to sell and lease the trust estate be a personal power, and the donees of the power should refuse to execute the trust, or should be removed for maladministration of the trust estate, then this power so necessary and beneficial, must fail. This the testator it seems to us, never intended. On the contrary, it is clear, we think, the testator meant that this power should be exercised by the trustees themselves, and by the survivor, and by the heirs, executors, and administrators of the survivor; and if they should renounce the trust, or be removed, then it should be exercised by any one who might be appointed in their place. In other words, it is a discretionary power attached to their office as trustees.

This case is, it seems to us, on *all fours* with the case of *Druid Park Heights Company vs. Oettinger*, 53 *Md.*, 46. There the testator devised certain property in trust for his wife and daughter, and authorized the trustees, or the survivor of them, or the heirs, executors, or administrators of the survivor of them, to sell or lease the trust property, if they should deem such sale or lease beneficial or advantageous to the parties in interest. Here the discretionary power to sell or lease was conferred in terms almost identical with the will now before us. One of the trustees declined the trust, and the other died, leaving a son, a minor, his heir-at-law. Upon the application of the beneficiaries under the will, Myers was appointed trustee, and as trustee he sold part of the trust property; and the question was whether he could exercise the power of sale which, by the terms of the will, was conferred on the trustees named in the will, and the survivor, and the heirs, executors and administrators of the survivor? And the Court held that the power to sell and lease was a mere discretionery power attached to the office of trustee, and was not a personal power conferred on the trustees by reason of special confidence reposed in them by the testator. And, this being so, Myers, the substituted trustee, had the power under the will to sell the property in question. And, for the same reason, we are of opinion that the discretionary power to sell and lease the property constituting the trust estate is a power annexed to the office of trustee, and to be exercised by any one who may be lawfully appointed to execute the trusts created by the will. For these reasons, the *pro forma* decree will be reversed, and the cause remanded.

> *Decree reversed, and*
> *cause remanded.*

(Decided 19th February, 1892.)