## ANDREW C. SNYDER ET AL. *vs.* THE SAFE DEPOSIT AND TRUST CO. OF BALTIMORE, TRUSTEE.

*Special Power of Sale Conferred Upon a Testamentary Trustee Held Not to Pass to a Substituted Trustee.*

A testator devised the residue of his estate to his brother H. and his successors in trust for the benefit of testator's wife during life and after her death to be divided among his children. In certain clauses of the will special powers were conferred upon the said "trustee, his successors or assigns." By the eleventh clause testator provided as follows: "I hereby invest my trustee H. with full power and authority to sell, or in any manner dispose of, and by his sole deed or deeds to grant and convey, lease and demise, any part or parts, or all of any real or leasehold property, which he may think proper to sell or dispose of." H. resigned his office of trustee and the appellee was substituted as trustee in his place. *Held*, upon a consideration of the will as a whole, that the power to sell the real estate was a special confidence reposed in H. as trustee and did not pass to the substituted trustee.

Appeal from a *pro forma* decree of the Circuit Court of Baltimore City.

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, PEARCE, SCHMUCKER and JONES, JJ.

*Frank Gosnell* (with whom was *Ernest S. McElroy* on the brief), for the appellants.

*R. H. Pleasants* for the appellee.

PEARCE, J., delivered the opinion of the Court.

This appeal involves the construction of certain clauses of the will of the late Richard H. Pleasants, and is taken from a *pro forma* decree of the Circuit Court for Baltimore City passed in a special case stated under the 47th Equity Rule, by which decree it was determined that the power given by the testator in the eleventh clause of his will to J. Hall Pleasants, trustee, to sell the testator's real estate, devolved upon the appellee as his successor in the trust. After making certain

bequests to his wife and sons and other relatives, he devised and bequeathed by the sixth clause of his will all the residue of his estate of every description, to his brother, "J. Hall Pleasants, and his successors," in trust for the sole use and benefit of the testator's wife during her life, and in further trust after her death to divide the same into six equal parts, and to transfer and convey one of these parts to each of his four sons, and to hold in trust one of these parts for each of his two daughters.

In the seventh clause he directed that if for any reason his brother, the trustee named, should not make the partition above mentioned, then such partition should be made by "The Fidelity Insurance Trust and Safe Deposit Company of Philadelphia."

The eleventh clause, which contains the power of sale, is in these words: "I hereby invest my trustee, *J. Hall Pleasants*, with full power and authority to sell, or in any manner dispose of, *and by his sole deed or deeds to grant and convey*, lease and demise, any part or parts, or all of any real or leasehold property, which *he may think proper* to sell or dispose of, and to invest the proceeds of sale or sales under the provisions of this my will."

J. Hall Pleasants and the testator's widow were made co-executors of the will, and the twelfth clause of the will directed that as soon as the personal estate should be administered, and the trustee should have received from the executors the personal property belonging to the residue of the estate, he should transfer and deliver to The Fidelity Insurance, Trust and Deposit Company of Philadelphia, all stocks, bonds, or other obligations to pay money, and mortgages upon lands located without the State of Maryland, to be held by it as trustee under the will for the uses and trusts previously declared as to the said residue of his estate, and also directed that upon the death or resignation of the trusteeship by his brother, "The Safe Deposit and Trust Company of Baltimore" should succeed him as trustee of and for the real estate belonging to the trust estate. The personal estate having been duly adminis-

tered, The Fidelity Insurance Trust and Safe Deposit Company of Philadelphia declined to accept the trust as to the securities and obligations beyond the State of Maryland, and the said J. Hall Pleasants was, on his petition, relieved of his duties as trustee under the will, and the appellee was by order of Court appointed trustee in his place and stead, and he thereupon transferred and delivered to the appellee the residue of the personal estate belonging to the trust estate, and the appellee is now administering that trust.   Subsequently J. Hall Pleasants also resigned the trusteeship of the real estate, and the appellee has succeeded him in this trust.

On September 29th, 1900, the appellee contracted to sell to the appellants a portion of said real estate, being the country home of the testator, for $15,000, "the title to be good and merchantable, or the sale to be declared off." The appellants allege that the appellee cannot convey a good and merchantable title, because the power of sale vested in J. Hall Pleasants does not devolve upon the appellee, and that such title can only be secured through a proceeding in equity to which all persons in interest are made parties.   The case stated presents the two following questions for decision :

"1st.  Did the power to sell testator's real estate, vested in J. Hall Pleasants, trustee, under the will of the testator, devolve upon the plaintiff upon the resignation of J. Hall Pleasants, trustee, under said will ?

"2nd.  Will a deed, executed, acknowledged and delivered by the plaintiff to the defendants, convey the whole title that the testator had at the time of his death, in fee-simple, to the lands and improvements contracted to be sold ?"

Both these questions were by the *pro forma* decree answered in the affirmative, and the defendants were required to perform and carry out their contract of purchase ; but we are of opinion that the power of sale did not devolve upon the appellee and that the *pro forma* decree should be reversed.

In all such cases the question is one purely of intention, to be ascertained from a fair construction of the whole will, and the nature and objects of the trust thereby created, and the

cardinal principle by which this Court has been governed in determining the devolution of such a power has been so well and plainly stated in the last reported case upon this subject that we restate it here. In *Mercer* v. *Safe Deposit Company*, 91 Md. 119, the Court said: "If upon such construction of the instrument, it appears that the power lodged with the trustees in connection with the trust, is a special confidence reposed in the particular trustee, or set of trustees, or is to be exercised only upon his or their personal judgment and discretion, such power can only be exercised by the designated donees, and will not pass to the substituted trustees. On the other hand, if it appears that the power is annexed to the office of the trustee for the purposes of the trust, and to promote its objects, then it will pass with the trust to the successors of the original trustees, and can be exercised by them."

An illustration of the latter class of cases is found in *Druid Heights Park Company* v. *Oettinger*, 53 Md. 46. There the testator directed the accumulation of a fund of $20,000 to produce an annuity for the benefit of his wife for her life, and gave to his executors, who were also trustees under his will, power in both capacities to sell and dispose of any part of his real estate for the purpose of raising this fund. Myers was subsequently appointed trustee, in place of the original trustees, both of whom had died, and it was held that the power of sale passed to him, because the prime purpose of the testator was to provide this fund by the sale of the real estate if required for the purpose, and if the power were denied to the substituted trustee, the estate could not be made productive and available for the *cestui que trust*, and it must be understood the testator intended the discretionary power to attach to the office of trustee he was creating. Another example of the same class of cases is found in *Safe Deposit and Trust Co.* v. *Sutro*, 75 Md. 361, where a similar power was held to pass to a substituted trustee on the ground that the provision by the testator that the power given to the testamentary trustees should be exercised by the survivor of them, and the *heirs*, executors and administrators of the survivor excluded the idea that the

power was a personal one, conferred on them by reason of some special confidence reposed in them, since he could not possibly know who might be the heirs, executors, or administrators of the survivor.    The case of *Zimmerman* v. *Fraley*, 70 Md. 561, illustrates the former class of cases.    John Zimmerman held as trustee under the will of Nicholas Holtz a trust fund to be invested by him for the use Mary A. Fraley "in such manner as he might deem advisable."    Upon his death, Joshua Zimmerman was by a decree of the Court appointed trustee in his place and was directed to invest a portion of the fund "in good landed security," but he applied the fund in part payment of a farm purchased by Mrs. Fraley.    When called on to account for the fund to those entitled after Mrs. Fraley's death, he relied upon the purchase of the land, as within the discretion conferred by the will, but it was held that the decree appointing him substituted trustee, while imposing upon him the duty of executing the trusts created by the will in respect to the fund in question, did not clothe him with the discretion which the testator had reposed in the person selected by himself.

And in *Lowe* v. *Convention*, 83 Md. 409, the testator bequeathed property to two named trustees to be invested in their discretion and with power to appoint successors by will. These trustees died without naming successors, and a new trustee was appointed by the Court, and it was held that he did not possess the discretion as to investments reposed in the original trustees by the will.

In the case before us, in the sixth clause of the will where he devises and bequeaths the residue of his estate in trust, the devise is to "J. Hall Pleasants *and his successors.*"    In the ninth clause, certain power and authority with reference to the daughters shares, is given to "my trustee, *his successors or assigns.*"    This clause was subsequently revoked by a codicil, but the fact of revocation does not affect the question we are considering.

In the tenth clause, he clothes the trustee, *his successors and assigns* with full power and authority to change the invest-

ments of the trust estate as often as he may consider advantageous to those interested. Thus in three separate clauses relating to different situations, the testator has expressly declared that the powers granted in creating and regulating the trust, should be exercised not only by the trustee named, but by *his successors.* On the other hand, in the eleventh clause which confers the power to sell the whole or any part of his real estate, the grant is to J. Hall Pleasants by name, without adding " *his successors* ;" and, as if to emphasize his intention to limit the exercise of this power to his brother, he provides for the conveyance to be by " the sole deed or deeds" of his brother. In *Lorings* v. *Marsh,* 6 Wall. 352, the Supreme Court held that the word "successors," superadded to the trustees named, made it clear the testator was not reposing especial confidence in the trustees first named, but gave a power attached to the office. We do not mean to say in all cases that the mere omission of the word "successors" would permit argument that the power would not devolve upon a substituted trustee, but in a will where that word is aptly used in some clauses and aptly omitted in others, its omission should be considered no less significant than its use, and should imply an intelligent purpose.

But it is not alone by the contrasted language of the clauses to which we have referred that our conclusion is supported. If it should appear that in other provisions of the will the testator has conferred clear discretionary power upon his brother as trustee, and that in doing so he has not superadded the word "successors," then the omission of that word in the eleventh clause affords a strong presumption that the power of sale was conferred by reason of special confidence reposed in that trustee. Upon scrutinizing the will we find two instances in which it seems to us clear that a personal power, to be exercised by his brother as trustee, and by him only, was given, and that in both the language in which it was conferred is the same employed in the eleventh clause.

In the thirteenth clause, the testator expresses the hope " that it may suit my trustee, J. Hall Pleasants, and my dear

wife, to permit so much of my trust estate as may at the time of my death be employed in the firm of J. P. Pleasants & Sons, to remain there for such time, and on such terms, as he and she may agree upon, so that the business of the firm shall continue after my death as before." The testator's brother and his wife may be fairly presumed to have knowledge of the character and condition of the firm's business which strangers could not have, and we think this power is clearly a personal power to be exercised by none but the trustee named. It is true that even he cannot exercise it without her consent, but that being given, the power is still to be exercised by him, and her wish could not avail if his discretion required him to refuse its exercise ; nor could her consent enable a successor to exercise the power, because the discretion reposed in his brother was personal in character.

Again, in the latter part of the fourteenth clause, the testator says—"I authorize my trustee, from the ready money of my trust estate held for his use, to loan to my son, John P., the sum of $20,000 so long as his mother may live, or for a shorter period, at the annual interest of five *per centum*, to be paid by him every six months to his mother ; should he, however, at any time fail to pay the interest to his mother for the space of three months, then my trustee shall have the right, and I hereby direct him to demand and enforce payment of the said loan." We have not overlooked the fact that in the clause above quoted the word "trustee" where it first occurs, is printed in the record, as "trustees," but an inspection of the original record as transmitted from the Circuit Court, shows that the proper word is "trustee," so that all confusion or obscurity which might otherwise arise from the use of the plural word in one part of the clause, and of the singular in another part, is thus removed. It is obvious that no one could be supposed to be as well informed in regard to the business capacity and business needs of the son, and at the same time, as solicitous for the interest of the mother, as the brother and uncle who was the trustee, and this consideration, in connection with the omission of the word "successors," or other words

·of similar import, is sufficient to satisfy us that the power here ·conferred is a discretionary and personal power.

The powers conferred in the thirteenth and fourteenth ·clauses are examples of the broad distinction referred to in *Safe Deposit Co.* v. *Sutro, supra,* between discretionary powers, *ministerial* in character, and connected with the management ·of the trust estate, and powers personal in character, to be exercised as a matter of personal judgment, as where discretion is left to trustees to consent to a marriage, or to make or withhold a gift.

We think our view is fortified by a comparison of the eleventh clause with the tenth clause which gives "to the trustee his successors and assigns," the power to change the investments of the trust estate.

If the eleventh clause were omitted from the will, we cannot perceive how the conclusion could be escaped that the broad power given in the tenth clause carried the right to sell real estate for reinvestment, but as if to exclude such construction as this, the testator in the eleventh clause carves out of the whole trust estate his investments in real estate, and provides in express terms that the power to change these investments shall be exercised only by the brother named as trustee. If the general power contained in the tenth clause was designed to embrace real estate held by the testator at his death, the eleventh clause, if held to extend the power to the successor of the trustee, would be superfluous and idle repetition ; and if held to limit the power to the original trustee, would be contradictory and irreconcilable with the tenth clause. The only means by which these clauses can be harmonized, as it is our duty to do, if possible, is by placing upon them the construction we have stated. We can perceive no special object of the testator to be promoted in making this sale, or in the execution of this power as in 53 Md. *supra,* and if the interests of the *cestui que trust,* as affected by occurrences subsequent to the testator's death, should require a sale, resort can be had to a Court of equity. The property now in question was the testator's country home to which his widow and

his children also would naturally be attached. She might desire its use and occupation during her life, under the provision of the will which gave her the use of the whole estate for life; or one of the children might desire its retention in the family, and its assignment to him or her in the partition of the estate which is directed on the mother's death, and in any such event, no substituted trustee could be expected so fully to appreciate the motives of the parties, or to exercise so just and considerate a discretion, as might be confidently expected from the brother of the testator, in view of his relationship to all the parties.

We think both the questions submitted should be answered in the negative and that the *pro forma* decree should be reversed.

*Decree reversed and cause remanded,
costs to be paid out of the trust estate.*