## POWERS INHERING IN A TRUST EXTENDING THROUGH THREE GENERATIONS.

Common Pleas Court of Franklin County.

THOMAS H. CLARK v. WILLIAM NEIL, TRUSTEE, ET AL.

Decided, March 15, 1917.

*Trust—Created by a Testator—To Continue Until Title Finally Vests in His Great Grandchildren—Power Necessary to Carry Out Provisions of the Trust—Held to Inhere in the Office—And Not to the Person Named as Trustee in the Will.*

The trust created by the testator William Neil, running through the lives of three classes of persons, is a trust connected with the office and not exclusively with the person named as trustee in the will, and the powers and duties conferred on the trustee, including the power to convey land by good and sufficient title, is a power running through the life of the trust, to be exercised successively by the person or persons upon whom execution of the trust for the time being devolves.

*Thomas H. Clark,* for plaintiff.
*J. W. Mooney,* contra.

DILLON, J.

This case is submitted on its merits upon an agreed statement of facts.

It involves the validity of title to property which came through William Neil, trustee for Henry M. Neil and family.

The question is whether William Neil, as trustee of William Neil, deceased, had the power and right to make deeds of conveyance of lands devised by the decedent without authority or order from court.

This question involves all titles in the addition of Indianola Forest, City of Columbus, excepting a few lots for which deeds were given by the original trustees. The interests are very great and the question of vast importance.

Some question was raised in the early history of this addition touching the power of William Neil, trustee, to make deeds in

fee for this property without having first obtained an order of court, and in one instance it is said opinion was given that an order of court was essential.

On careful examination of the law and the will I am of the opinion that such order was unnecessary; that William Neil, trustee, had full power and authority to sell the property without obtaining an order from the court and that his deeds convey legal title, and that the plaintiff is entitled to the relief by him sought, quieting the title to his property.

I fully coincide in the opinion of my associate, Judge Kinkead, who while in practice passed on the validity of the title to this property when the Indianola Forest Addition was opened up. I am content with adopting his opinion as that of this court, which is now here in part set forth:

William Neil died testate May 18, 1870. I have read over the entire will in order to arrive at the full scope and extent of the trusts provided for therein. The testator's intention, as to these trusts, and how they were to be carried out, has *all to do* with the determination of the *powers* of a successor in the trusteeship.

The premises were devised to Robert E. Neil and William Dennison in trust.

There are four distinct trusts created in this will; Item 2 creates a trust for the benefit of John G. Neil; item 3 creates a trust for the benefit of Henry M. Neil; item 4 creates trusts for the benefit of John G. Neil and Henry M. Neil, for their shares, respectively, of the residuary estate.

The powers and duties conferred on the trustees for all these trusts are:

1. To collect rents, profits and interests, to pay taxes, and to pay the income to the support of John G. Neil and Henry M. Neil.

2. To sell any part of the real estate, and to invest the proceeds.

3. To hold the proceeds for the benefit of John G. Neil and Henry M. Neil.

4. To pay over to any child or children of the two beneficiaries, after their deaths.

The purpose of the trust was to place the entire management of all the property devised for the benefit of Henry M. Neil and his family in the hands of trustees for the *support* of Henry M. Neil and family. To enable the trustees to fully carry out this trust, the testator gave full authority to them to sell his land, *the proceeds to be held in trust for the same purposes, and for the same purposes as said land was to be held.*

The polar star of this trust was the *"support of said Henry M. Neil and his family, during the lifetime of said Henry M. Neil."*

Upon the death of Henry M. Neil the income to be derived from the trust was to be paid to the children of Henry M. Neil, and at their death the "principal" (not the land), is to be paid over to the children of such deceased child or children, *i. e.*, the great-grandchildren of the testator.

The fact that the chief purpose of the trust is *the support* of Henry M. Neil and his children during their lives, and the further fact that the will provides that, "at their death (William Neil's grandchildren), respectively, to pay over the share of the *principal* to the children of said deceased child or children," shows that the testator intended the broad and comprehensive powers of sale to be coupled with this trust, that is, with the *office of trustee*, during the continuance of the trust. He provides for the continuance of the trust throughout the lives of his son, Henry M. Neil, and of his children, the testator's grandchildren. The testator must be presumed to have believed that his self-appointed trustee could not possibly live throughout the life of the trust he was creating. And this trust, it will be remembered, was to pay *"principal"* derived from both the income by way of rents and profits from the real estate, as well as that which was derived from the sale of his lands, over to his great-grandchildren at the end of his trust.

The testator nowhere made a devise of a remainder in the fee to the lands of his grandchildren, that which is to go to them being the *principal* derived from the proceeds which he directs to be invested.

The trust was not merely to hold the lands, and to receive the rents and profits, but to sell the lands. The will does not provide that the trustees should sell when they should see fit,

but the broad and comprehensive power of sale is conferred and coupled with the trust, which is only complete when the land is all sold.

The provision as to the power of sale is as follows:

"I do fully authorize and empower said trustees to sell all or any part of said real estate, in such quantities, in such manner, on such terms, and at such prices as to them shall seem best, the purchaser not to be liable for the application of the purchase money; and to execute any and all conveyances and other papers therefore that are proper and necessary, and to collect and invest the proceeds in such manner as they deem best, the proceeds of said land to be held in trust for the same purposes, and for the same purposes as said land is above directed to be held. * * *

"If one of said trustees should accept said office or trust, or if after acceptance of both, one should resign or cease to act, or be absent from Columbus when any act was necessary to be done, all the powers and interests of this will invested in said trustee shall pass to and be exercised by the sole trustee acting."

There is a marked distinction between the powers of an executor merely, and a trustee. In the great majority of instances when power is conferred upon an executor, it is to be regarded as purely personal. It can not in such a case be exercised by an administrator with the will annexed. We have a case of that kind in Ohio (*Wills* v. *Cowper*, 2 Ohio, 131). The doctrine of that case, however, is not to be confounded with the rule to be applied to the trust in hand.

Powers of trustees are of different kinds:

1. Powers in the nature of a trust, and

2. Naked or discretionary trust.

"A power in the nature of a trust, or a mixed trust and power, is a power annexed to the office of trustee for *the purposes of the trust* and to promote its objects. It is an imperative power, imposing a duty on the trustee which must be executed and the performance of which can be enforced." *28 Encyc. of Law*, 984; *Freeman* v. *Prendergast*, 94 Ga., 369.

"Naked, or collateral, or discretionary powers are powers to be exercised, or not, by trustees at their sole discretion, and according to their own judgment." *Id.*, 985.

And again,

"Discretionary powers are sometimes considered to be merely ministerial in character, such as the power to sell or lease, as distinguished from personal powers, to be exercised entirely as a matter of judgment." *Id.*, 985.

"Powers that are considered to be purely discretionary or naked, or collateral, can be exercised only by the designated donees in person. On the other hand, those powers which are coupled with an interest or annexed to the office of the trustee will pass with the trust to the successors or survivors of the original trustees and can be exercised by them." *28 Encyc. of Law*, 988.

In the case of *Peter* v. *Beverly*, 10 Peters, 532, the Supreme Court of the United States stated:

"The general principle of the common law, as laid down by Lord Coke and sanctioned by many judicial decisions, is that when the power given to several persons is a mere naked power to sell, not coupled with an interest, it must be exercised by all, and does not survive. But where the power is coupled with an interest, it may be executed by the survivor. But the difficulty arises in the application of the rule to particular cases. It may, perhaps, be considered as the better conclusion to be drawn from the English cases on this question, that a mere direction, in a will, to the executors to sell land, without any words vesting in them an interest in the land, or creating a trust, will be only a naked power, which does not survive. In such case, there is no one who has a right to enforce an execution of the power. But when anything is directed to be done in which third persons are interested, and who have a right to call on the executors to execute the power, such power survives. This becomes necessary for the purpose of effecting the object of the power. It is not a power coupled with an interest in executors, because they may derive a personal benefit from the devise. For a trust will survive though no way beneficial to the trustee. It is the possession of the legal estate, or a right in the subject over which the power is to be exercised, that makes the interest in question. And when an executor, * * * or other trustee, is invested with the rents, and profits of land, for the sale or use of another, it is still an authority coupled with an interest, and survives."

Again, Mr. Justice Platt in the case of *Franklin* v. *Osgood*, 2d John's Ch., 19, refers to a class of cases in the English courts, where it is held that although, from the terms made use of in creating the power, detached from other parts of the will, it might be considered a mere naked power to sell, yet, if from its connection with other provisions in the will it clearly appears to have been the intention of the testator that the land should be sold to execute the trusts in the will, and such sale is necessary for the purpose of executing such trusts, it will be construed as creating a power coupled with an interest, and will survive.

The trusts in the Neil will, within the purview of all the authorities, are coupled with an interest, and are given or conferred on the trustees, *virtute officii*. They come within the general doctrine stated in the case of *Wills* v. *Cowper*, 2 Ohio, 131, viz.:

"Where a trust is created and power given to the trustee, which it is his duty to execute, he is considered as a trustee of the power, and not as having a discretion to exercise it or not; and neither the negligence nor death of the trustee, or other circumstances, will be permitted by this court to defeat the interests of those for whose benefit it was his duty to execute it."

The power of sale is so coupled with the trust that it passes to and vests in a successor.

I refer to authorities which conclusively show that the Neil trusts and the power of sale connected therewith are connected with or relates to the office of trustee, and may be exercised by a successor.

In *Boutelle* v. *Bank*, 17 R. I., 781, is to be found a clause in a will, about which it would seem there would be more doubt as to the power of sale passing to the trustee appointed by the court than is the case in the Neil case. The seventh clause in the will in this case is as follows:

"If it should appear desirable, from any cause that may arise, that my real estate had better be sold, and the avails thereof invested in some good stocks, or on mortgage, I authorized my executors so to do, or the survivor of them, as executor or trustee, and that the same may be done with the last named undi-

vided half while held in trust, and to appropriate the use and income thereof as hereinbefore directed, confiding in the discretion of my said executors and trustees for such contingency.''

Objection was made to the power of the trustee under the will to make sale of the property. The following is quoted from the opinion:

''In May, 1889, W. M. B. resigned the said trust, and the complainant was appointed trustee in his place by decree of this court. The question is, whether the new trustee succeeded to the power of sale.''

''In Lewin on Trusts, 608, cited in *Bailey* v. *Burges*, 10 R. I., 422, it is said that it seems that the appointment of new trustees by the court would not, but for recent acts communicate arbitrary or special discretionary powers, unless there were expressly or in fair construction limited to the trustees for the time being.

''In this case we think the power is annexed to the office, and not to the person named as trustee in his individual character. Power is given to trustees, in the plural, as though the testatrix had in mind other trustees as successors. Moreover, it is to continue while the property is held in trust. This is equivalent to give it to the trustees for the time being, and so within the rule of the cases.''

The case of *Druid Park, etc., Co.* v. *Oettinger*, 53 Md., 46, is a much stronger illustration, notwithstanding the testator made provision for a successor. In this case, it was held that the trustee appointed by the court had power to proceed according to the terms of the will, and make sales of real estate without an order of court.

The clause in the will in this case is as follows:

''And I hereby authorize and empower my executor and trustees, and the survivor of them, and the heirs, executors and administrators of the survivor, either in their capacity as executors or trustees, or both capacities, if necessary, to sell and dispose of any part or parts of my real estate, real, personal and mixed, either at public or private sale as to them, or him shall seem most advantageous for the purposes of raising the sum of $20,000 hereinbefore devised in trust for the benefit of my said beloved wife for life, etc., * * * and to make, execute and deliver, in due form of law, necessary deeds, conveyances and

assignments for the estate and property so sold to the purchaser or purchasers thereof.''

''John J. Griffith and Chas. B. Keyworth were appointed executors. Griffith died leaving a son who was a minor. His administrator declined to execute the trust; a bill was filed for the appointment of a trustee to execute the trust, alleging the minority of the heir at law of John J. Griffith, the trustee who had died, and insisted for a new trustee to be appointed. Andrew J. Myers was appointed trustee. He afterwards sold, at private sale, to one S., the land mentioned in the will to be sold. *This sale was reported to the court and was ratified and confirmed by it.* The sole question in the case is, was this sale by Andrew J. Myers properly authorized and valid? Appellee contends that the will of Edward Griffith created a special and discretionary trust in the persons he names as trustees, and that the decree of the court did not give to Myers, the new trustee, power to make the sale, and could not do it; that the estate and powers passed irrevocably, under the circumstances stated by the will and the common law to the son of John J. Griffith, the acting trustee, as his heir at law, and that the sale made by Myers was without authority and void.

''The appellants, on the other hand, insisted that the intent of the testator is apparent to create trusts, without intending that the persons named should, at all events and at all hazards, execute them to the exclusion of all others, or of the control of the courts for their protection and preservation; and that it was within the power of the court of equity when the trust would fail for the want of a competent person to execute it, coming within the description and designation of the will, to appoint a trustee to execute and preserve the trust. And if it be conceded that there was a discretion reposed in the trustees named in the will which would not be reposed in a trustee appointed by the court, still the court could order the sale and could direct and approve the investment, and having approved the sale which was made it was doing a legitimate thing, and the sale is, therefore, good and valid, and the title of the purchaser can not be questioned.''

Among other things said, after having commented upon the various devises, the court said:

''To accomplish these objects he creates a trust; and for the purpose of making the estate productive he gives the trustees the power of selling and leasing, as might be most advantageous, in their judgment, to the parties. These were trusts the testator

could not have intended to fail by reason of the death, refusal, or incapacity of any of the parties coming within the express terms which he has used to designate the trustees. The estate needed to be watched, managed, changed, sold or leased, so as to make it productive, and the testator was endeavoring to provide, so that in no event should there be wanting a trustee or trustees who could perform the duties necessary to produce that result. * * * Now, there was a trust, imperative in its character, and which he intended should be executed at all events whether the trustees he named failed to accept the trust or not; and it aids in getting the intent the testator had throughout the will. The exigencies of this trust might require the interposition of the court to execute, and it is very clear that a court of equity would have power to prevent this provision failing, for want of a trustee to discharge the duties.''

Then referring to another trust which provided that there should be raised a $20,000 fund, the court further said:

''It was clearly an imperative trust, which the court would compel to be executed, and if the trustees named refuse to execute it, the court would appoint one or more to sell and to execute the trusts fully. To that extent certainly it was a power attaching to the office, which the beneficiaries could insist on having executed. It was necessary to the successful carrying out of the testator's will. It does not appear from the objects and scope of the will that the testator intended reposing a special confidence in the sense of personal trust because of especial fitness beyond the persons designated by name.

''In the language used to designate their successors, in the event of death, such phrases are employed as would admit utter strangers to the testator to the execution of the trusts, and it might be persons who had no interest in him or his beneficiaries. * * * Looking to the whole of this will and the objects intended to be secured, we may well hold that this testator intended that whoever might be the trustee to carry out the provisions of his will, should have the power of sale, or leasing his estate for the purpose of making it productive and available for the *cestuis que trust*. In other words, that he was given a discretionary power, which he designed to attach to the office of the trust he was creating.''

The court then enters into a consideration of the question whether or not the court had jurisdiction to appoint a trustee who would have the power to make this particular sale. It is

observed that the object of the application was not to procure a sale of the land, but it was to procure a trustee's appointment to carry out the trust, which, by reason of the minority of the heir at law and the renunciation of the executors of John J. Griffiths, was without an active trustee to discharge the duties; and if the power of sale attaching to the office of trustee; or if, without attaching to the office, the trust was under the control of the court and the court could direct the sale without further proceedings, and the appellant contends that the sale made and reported to the court and approved by it was valid.

Directing special attention to the power of this new trustee under the order of his appointment, authorize him to make a sale of this real estate, the court observes that in making the appointment all of the parties before the court in seeking a new trustee for the management of the trust,

"necessarily contemplated the sale of the real estate if necessary to the trust, or advantageous to the *cestuis que trust*. After the decree appointing the trustee on his *ex parte* application, the court would have ordered a sale. Without such application or previous order, the trustee has made a sale, and reported it to the court, and the court has ratified it after their notice. All intendments that can be made ought to be made in favor of such sale so adopted by and ratified by the court, for the security of the purchaser who has acted on such ratification.

"There are occasions and circumstances when a trustee must exercise a discretion, though none is given by the instrument creating the trust, otherwise great loss may happen to the estate; or a great opportunity may be lost by delay. Hence the rule has been adopted in equity, that a trustee may do that without a special order, which the court, on a case made, would order."

In the case of *Edwards* v. *Maupin*, 7 Mackey, 39, the will provides:

"And I do hereby confer upon my said trustees full power and authority, at his or their discretion, from time to time, to sell by private or public sale, * * * all or any part of the trust property in this will devised and bequeathed to my said trustees, and to receive, grant acquittances for and reinvest the proceeds of such sales."

One of the trustees died and the other resigned, and two other persons were appointed trustees and the order conferred all of the powers which were vested in the original trustee by the terms of the will upon the new trustees. And the trustee, without an order of the court, sold the real estate and made a report thereafter to the court for approval thereof.

The court, as a matter of law, held if a testator omitting to direct that a trustee appointed by the court in case of a vacancy shall have the same discretionary power which he had given to an original trustee, then such discretionary power will be construed to be personal.

The case of *Radford* v. *Monks*, 132 Mass., 405, was under a statute authorizing the court to appoint a trustee.

"A testator by his will devised all his estate, real and personal, to two persons, one of whom was a son, in trust to convert the personal estate into money and to manage the real estate, repairing, leasing, and, if necessary, rebuilding and receiving the income thereof, and also provided as follows:

"And I authorize my trustees, if they think best, to sell and convey such of my lands as are in B, or any part of such land, and to reinvest the proceeds of such sale or lands with the proceeds of the sales of my personal estate."

The lands in B were unimproved. *Held:* That the power to sell the lands in B was not restricted to the trustees named in the will, but might be exercised by their successor in the trusts. On March 7, 1881, Osborn Howes resigned the trust and Frank H. Monks was appointed in his stead. A bill in equity was filed against the trustees under the will to restrain them from selling real estate because they had no power under the will to sell the same. The court said:

"When the new trustee was appointed, he had, by force of the statute, the same powers, rights and duties as if he had been originally appointed, and the estate vested in him as it had vested in the trustee in whose place he was substituted. (General Stat., Chap. 100, Section 9.)

"If the power of sale attaching to the trust, and was not personal to the former trustee, it would pass to the new trustee as part of the trust.

"The testator evidently intended to authorize a sale  *  *  * at any time during the continuance of the trust, when it should seem to the trustees to be for the advantage of the estate that they should be sold. The discretion given to the trustees as a part of the trust, and the power of sale has enabled them to execute the trust. It is a power coupled with a trust. The terms in which the power is given, the general provisions of the will, and the character and condition of the estate, are sufficient to show this; and the fact that the testator gave directions to the trustee authorized to make the sale as to the investment of his personal property, indicates that he understood that the sale would be made by the trustee who had charge of the personal property."

The statute in that state provided that the trust estate shall vest in the new trustee in like manner as it has vested or would have vested in the trustee in whose place he is substituted.

Under a statute in Pennsylvania, which provided that every trustee appointed by the court shall have the same powers and authorities in relation to the trust to all intents and purposes as his predecessor in the trust had, the court held that a successor may exercise discretionary powers conferred upon the original trustee.

This was upon the theory that it is unreasonable to suppose that the donor either intended it to be exercised by the original trustee after his unworthiness had been ascertained, or designed that it should be lost. (*Wilson* v. *Pennough*, 27 Pa. St., 238.)

The statute in New York provides:

"The chancellor shall have full power to appoint a new trustee in the place of a trustee resigned or removed; and when in consequence of such resignation or removal there shall be no acting trustee, the court, in its discretion, may appoint new trustees or cause the trust to be executed by one of its own officers under its direction." Section 71 of act relating to uses and trusts, R. S., N. Y., 2440.

In the 132 N. Y., 451, a case arose under this statute, the facts of which are as follows: Trustees appointed by a will refused to accept, whereupon one C was appointed by the court. C was discharged upon his own petition; others were appointed to take the trust, without limiting their powers or defining the

manner of their execution. It was held that the appointment of defendants was not an exercise of the general equity powers of the court, but was pursuant to the statute authorizing the court "to appoint a new trustee in place of a trustee resigned or removed," and the appointees *took all the powers conferred* by the will on the original trustees.

So much for the decisions. The Neil will would come under the general doctrine of trusts above stated, which would authorize William Neil, successor in the trust, to perform the duties of the office and to make sales and conveyances.

But the statute in Ohio covers the ground. Section 5986 (now Section 10596), which authorizes the appointment of a trustee to execute a trust, was passed May 3, 1852. Judge Swan, in his early annotations of the statutes, stated that this statute was passed to clear up the doubt that previously existed as to whether or not a court of chancery could execute a trust where a will conferred a mere power of selling, or otherwise disposing of property and the power had not been executed. The statute reads as follows:

"If any testamentary trustee shall die, decline to accept, resign, become incapacitated, or be removed, and such will has not provided for the contingency of the death, incapacity or refusal of such trustee or trustees to accept or execute the trust, or such will names no trustee, the probate court, having probate of said will, may appoint some suitable person or persons *to execute the trust according to the will,* who shall give bond with security as provided herein." (Section 5986, R. S.)

A court of equity would have the power to appoint a trustee in succession upon the death of the trustee named in the will, without the aid of this statute, but the probate court not being a court of original equity jurisdiction, this statute would be necessary to enable it to appoint a trustee, though it was passed before the probate court was established.

The statute, however, goes beyond the mere power of appointment, and confers power on the *"person or persons to execute the trust according to the will."*

The trustee, William Neil, is a trustee of the power, and may, therefore, exercise the power according to the terms of the will.

The terms of the will touching the power of sale are: "I *do fully authorize and empower said trustees to sell all or any part of said real estate,* in such manner, on such terms, and at such prices as to them shall seem best."

The power of sale is clear; the manner and terms are discretionary with the trustee.

There is no particular significance attached to the words, "said trustees;" nor to the fact that the testator provided for the contingency of non-acceptance by his trustees named, nor for the resignation or absence of one, what should be done. It may readily be conceded that the testator clearly was providing for contingencies during the life of the trustees named. This is unimportant, I say, because the testator had made and constituted trusts to run through the lives of three classes of persons, and the powers and duties connected with these trusts must be exercised throughout the life of the trusts by the person or persons occupying the office of trustee.

All of the powers and duties conferred upon the trustee named in the will, such as the collection of rents, the payment to each child his share upon the death of his father, from a consideration of the whole will, are annexed to the office of trustee. No one would question this.

And the power of sale and reinvestment of the funds, and the use of the proceeds for the same purposes as in the other trusts, clearly show that it is annexed to the office.

William Neil, trustee, has power to make the sale and conveyance according to the will, and without any order of court.

A decree quieting title of plaintiff may be drawn.