EDITH DICKEY, Appellant, v. RICHARD BARNSTABLE, MARY
F. BARNSTABLE AND SAMUEL WYATT, Appellees.

**Estates: POWER OF SALE: INTEREST OF REMAINDERMAN.** A deed
1    granting an undivided one-half interest in land to a mother
for life, the remainder to her daughter, and also conferring
upon the mother full power to sell and convey the absolute
title upon condition that she reinvest the proceeds for herself
for life, with the remainder to her daughter, vests a life es-
tate in the mother, coupled with a power of sale, while the
daughter takes a remainder interest subject to an exercise of
the power of sale.

**Same.** There is no such repugnancy in the addition of an abso-
2    lute power of sale to the grant of a life estate with the remain-
der over, as will defeat the power of sale.

**Estates: POWER OF SALE.** Where a power of absolute disposition
3    is annexed to a life estate, limited only by a reinvestment for
the benefit of the life tenant and remainderman, equity will
not interfere with the exercise of the power in the absence of
a showing of fraud or abuse of discretion.

**Sale by Life Tenant: BOND: DISPOSITION OF FUND: JURISDICTION**
4    OF EQUITY. That a life tenant, with the remainder over, who
is invested with a power of absolute disposal, is not financially
responsible, will not justify the court in requiring him to

give bonds, but where an intent to defraud the remainderman is shown, or there is danger that the proceeds of the sale will be squandered or improperly reinvested, the court may direct the disposition of the fund or make such order as will secure the same.    Evidence considered and held to justify the court in ordering a disposition of the funds.

*Appeal from Franklin District Court.*—Hon. J. R. Whit-aker, Judge.

Thursday, February 4, 1904.

Suit in equity to enjoin defendants Barnstable from conveying certain lands to their codefendant, Wyatt, to establish plaintiff's interest in said land, and for general equitable relief. The trial court dismissed plaintiff's petition, and she appeals.—*Reversed.*

*Taylor & Evans* for appellant.

*Birdsall & Birdsall* and *C. M. Nagle* for appellees.

Deemer, C. J.—Defendants Barnstable are husband and wife. Mary Barnstable is plaintiff's mother, and Richard is her step-father. In the year 1889 one Ridgley made a deed of the lands to Richard and Mary Barnstable, the material parts of which read as follows:

"* * * does, by these presents, grant, bargain, sell convey and confirm unto the said parties of the second part, the following described real estate situated in the County of Franklin, State of Iowa, to wit:

"The Northwest Quarter (N. W. ¼) of Section Thirty-two (32), in Township Ninety (90) of Range Twenty-two (22), West of the Fifth Principal Meridian.

"To have and to hold the said premises with the rights, immunities and privileges thereunto belonging, to the said parties of the second part, in the following manner, to wit:

"The undivided one-half of said premises to said Richard Barnstable and his heirs and assigns forever, and the other undivided half of said real estate to said Mary F.

Barnstable, wife of said Richard Barnstable, for, and during her natural life, and at her death, the said half shall belong to Edith, the daughter of said Mary F. Barnstable, and to any other children of said Mary F. Barnstable, in equal parts, and the said Mary F. Barnstable shall have full power and authority to sell and convey the full, absolute fee-simple title to her said undivided half, but she shall reinvest the proceeds for herself for life, with the remainder at her death to her daughter Edith and to her other children if any, with the same power in said Mary F. Barnstable to resell and reinvest as is given her in this deed, and in case said Mary F. Barnstable dies without descendants living at her death, then said undivided half, or the proceeds thereof, if sold and reinvested, shall go to the brothers and sisters of said Mary F. Barnstable."

In 1890 the Barnstable family, which included the plaintiff, who was then a minor, entered into possession of the property, and continued in the occupancy thereof until the beginning of this suit. In January of the year 1900 the Barnstables entered into negotiations for the sale of the lands to the defendant Wyatt; and this action was brought to enjoin the sale to him, to establish plaintiff's title to one-half of said land, subject only to a life estate in Mary Barnstable, and to restrain defendants from converting the land into money, and from removing the proceeds of the same from the state of Iowa. It is charged that Mary Barnstable is and was insolvent, and that the sale of the land was for the purpose of placing the proceeds beyond plaintiff's reach, and to put it out of her power to enforce her rights under the deed. She also alleges that the power of sale conferred on defendant Mary Barnstable by the terms of the deed is inconsistent with the grant, and therefore void, and that plaintiff owns an undivided one-half of the land, subject only to her mother's life estate. It also appears that in the year 1892 the defendants Barnstable made a voluntary partition of the land as between themselves, and that in the same year Richard Barnstable commenced an action in the

district court of Franklin county against Mary Barnstable and Edith Ridgley (now Edith Dickey), the plaintiff herein, wherein the court was asked to construe the Ridgley deed, whereby he and his wife obtained title, and to confirm the voluntary partition theretofore made between them. At the time that suit was brought, plaintiff was seventeen years of age, and at the time this action was commenced she was twenty-seven. A guardian *ad litem* was appointed for plaintiff in the suit brought by her stepfather, and such guardian appeared therein. That suit resulted in a decree from which we quote the following:

"It is therefore ordered, adjudged, and decreed by the court that said deeds so executed between Richard and Mary F. Barnstable shall be, and they are considered to be, a sale and reinvestment of the proceeds thereof of said land so held by her, and that the title to Richard Barnstable be forever quieted in the south half of the northwest quarter of section thirty-two (32), and a strip of land twenty rods in width off the south side of the northwest quarter of the northwest quarter of said section 32, all in township ninety (90), range twenty-two (22), in Franklin county, Iowa, freed from all claims of Mary F. Barnstable and Edith Ridgley, defendants, under said deed from Stephen Ridgley, and that the remaining portion of said land, to wit, the north half of the northwest quarter of section 32, except a strip twenty rods wide off the south side of the northwest quarter of the northwest quarter of said section 32, all in township 90 north, range 22, in Franklin county, Iowa, be quieted in defendant Mary F. Barnstable, and be held by her subject to the conditions as stated in the original deed from Stephen Ridgley to her and her husband, Richard Barnstable. And it is further ordered that plaintiff pay all costs of this proceeding."

Plaintiff contends that this decree is not binding upon her, because no notice of the proceedings was given. The notice was entitled as in the district court of Franklin county, and was entitled, "Richard Barnstable vs. Mary

Barnstable and Edith ——.'' It was addressed ''to Said Defendants,'' and was otherwise regular; and sufficient service thereof was accepted by Mary Barnstable and Edith Ridgley, who acknowledged in writing that they were fully informed of the nature of the action. Appellant contends in argument that she is the owner of a vested estate in fee simple in remainder, after taking out the life estate of her mother, and that the provisions of the deed conferring upon her mother a power of sale are void, because repugnant to a prior grant of the fee; that the decree to which we have referred is void, because of want of notice of the action, because the notice was not properly served, and for the further reason that it was collusive and fraudulent as to plaintiff. She also contends that in any event she is entitled to the interposition of a court of equity for the protection of her rights under the Ridgley deed, on the theory that her mother is a trustee of the title for her, and that as such trustee she is violating the terms of her trust. The first question to be determined is the nature of plaintiff's title in and to the property.

Turning back to the deed, we discover that the grant is primarily to Richard and Mary Barnstable. The habendum clause indicates that it is a grant of an undivided one-half of said land to Richard Barnstable, and his heirs and assigns, forever, and of the other half to Mary Barnstable, for and during her natural life, ''and at her death the said half shall belong to Edith,'' her daughter, and to any other children of said Mary in equal parts. But it is also provided that ''the said Mary F. Barnstable shall have full power and authority to sell and convey the full, absolute fee-simple title to her said undivided half, but she shall reinvest the proceeds for herself for life, with the remainder at her death to her daughter Edith, and to her other children if any, with the same power in said Mary F. Barnstable to resell and reinvest as is given her in this deed, and in case Mary F. Barnstable dies without descendants living at her death, then said undivided

1. ESTATES: life tenant: power of sale: interest of remainderman.

half, or the proceeds thereof if sold and reinvested, shall go to the brothers and sisters of said Mary F. Barnstable." What estate does Edith take under this deed? That is the pivotal question in the case. Appellant says a vested estate in remainder to one-half of the land in fee, while the appellee contends that she takes an estate in reversion, and only such interest as remains after the exercise of the power conferred upon her mother to sell and convey the absolute fee-simple title to her undivided one-half interest. There is no doubt, we think, that Mary Barnstable is given a life estate in her own right to an undivided one-half of the land; and it is also clear that power is conferred upon her to sell and dispose of the full, absolute fee-simple title thereto. That one may create an estate, and likewise provide for its destruction, is everywhere held. For instance, it is entirely competent for one to grant a life estate to another, with remainder to a third person, and at the same time power may be given to the life tenant to defeat the remainder by a disposition of the property. *McCullough's Adm'r v. Anderson,* 11 Ky. 939 (13 S. W. Rep. 353, 7 L. R. A. 836), and cases cited.

After the expiration of the life estate, and in the event of nonexercise of the power, the remainder takes effect out of the estate granted. To state it in another way, the remainder over after a life estate, in which the life tenant has power of absolute disposition, is valid as to property not disposed of. But such remainder is, of course, at an end when the property is disposed of in virtue of the power of disposition. *Crozier v. Bray,* 120 N. Y. 366 (24 N. E. Rep. 712); *Hovey v. Walbank,* 100 Cal. 192 (34 Pac. Rep. 650); *Fritsch v. Klausing,* 11 Ky. 788 (13 S. W. Rep. 241). Such a case is clearly distinguishable from those wherein it is held that a condition or limitation over after the grant of an absolute estate is void for repugnance. This is not a case where there is a restriction against the sale of an estate in fee simple in remainder, as were many

2. SAME.

which counsel for appellant cite. Rather, it is the grant of
an estate in remainder, subject to the exercise of a power of
sale in the life tenant. That such a grant is valid is held,
we think, by all the authorities. It is nothing more, in effect
than the grant of what remains after the exercise of the
power to a remainderman. Plaintiff's counsel do not ser-
iously question these rules, but they argue that, as the power
was not conferred until after a grant of the remainder, they
do not apply, and for that reason they invoke the rule that
the power is repugnant to the grant, and therefore void. Such
a rule does not apply to a grant like this, where a life estate
is first created, and to that is annexed the power of disposi-
tion of the whole estate. There is no inconsistency in the
terms of the grant. Here there is a disposition of a life es-
tate, to which is added unlimited power of disposition, as
a separate grant, with remainder over to certain parties.
Moreover, Edith's estate is expressly limited to take effect
on the death of her mother. Taking the deed by its "four
corners," there can be no doubt, we think, that our construc-
tion of it is correct, and that there is no room for applica-
tion of the rule contended for by plaintiff's counsel. As sus-
taining our conclusions, see *Beedy v. Finney,* 118 Iowa, 276;
*Bassett v. Budlong,* 77 Mich. 338 (43 N. W. Rep. 984, 18
Am. St. Rep. 404); *Doren v. Gillum,* 136 Ind. 134 (35 N.
E. Rep. 1101); 1 Jones on R. P. C. 20.

II. Having found that Mary Barnstable had power to
dispose of the fee, we need not consider the second point, as
to the effect of the decree to which we have referred. And
the only other proposition is the nature of the
power, and the right of plaintiff, through a
court of equity, to interfere with the exercise thereof. The
appointee, Mary Barnstable, had full power and authority
to sell and convey the absolute fee-simple title; the only
limitation thereon being that she should reinvest the pro-
ceeds for herself for life, with remainder at her death to her
daughter, Edith, and to her other children, if any. The
whole matter is thus left to the discretion of the donee of

3. ESTATES:
power of
sale.

the power, and it is fundamental that courts will not interfere with this discretion in the absence of a showing that the appointee is abusing the power, or acting in an arbitrary or capricious manner. *Giles v. Tuttle,* 104 U. S. 291 (26 L. Ed. 745); *Proctor v. Heyer,* 122 Mass. 525. In *Crozier v. Hoyt,* 97 Ill. 22, it is squarely held that a court of equity will not interfere with the discretionary power of an appointee, in the absence of evidence of fraud or collusion. See, also, *Hamilton v. Ins. Co.,* 6 Lea, 402. In *Ingle v. Jones,* 43 Iowa, 286, we also held that discretionary power lodged in a trustee will not be controlled by a court, in the absence of fraud. See, also, *Sneer v. Stutz,* 93 Iowa, 62; *Sneer v. Stutz,* 102 Iowa, 463. With these rules settled, we now go to the evidence to see if there is any reason for the interference of a court of equity in this matter of the sale to the defendant Wyatt.

That Mary Barnstable had no property aside from her life estate in this land is conceded, but there is no evidence that she is in debt to any amount whatever. The grantor in the Ridgley deed knew of her financial condition; yet, notwithstanding this, he saw fit to repose full confidence in her, and gave her the power to dispose of the fee-simple estate, without requiring a bond or other security that she would properly execute the power. Courts will not substitute their judgment for that of the donor of the power. Nor will they interfere with the discretion of a trustee, reasonably and fairly exercised. *Proctor v. Heyer supra; Caspari v. Cutcheon,* 110 Mich. 86 (67 N. W. Rep. 1093). That a trustee is not financially responsible is not enough, of itself, to justify a court in interfering, or in requiring a trustee to give bonds. Perry on Trust, section 511, and cases cited.

But it is argued that Richard and Mary Barnstable are conspiring to cheat and defraud plaintiff out of her property rights and interests, and that it is not the intention of the mother to reinvest the proceeds as required by the deed. If such be the fact then there is no doubt of the jurisdiction of

a court of equity to interfere for the protection of the *cestui que* trust. *Gott v. Cook*, 7 Paige, 538; *Druid Park. v. Oettinger*, 53 Md. 63; *Carson v. Carson*, 60 N. C. 575; *Wilson v. Church*, 2 Rich. Eq. (C. S.) 192. While courts will not ordinarily interfere with the discretionary powers of a trustee, yet, where the question is simply one of detail, rather than one of judgment and opinion, they will exercise a greater control. *Druid Park v. Oettinger, supra*. To illustrate: While we do not think that a court of equity would be justified in interfering with the discretion of the trustee as to the time, manner, or nature of the sale of the property, yet, as to the matter of the reinvestment of the proceeds, and the security of the funds derived therefrom, this is largely a matter of detail, and if satisfied that there is danger that the fund will not be properly reinvested, or will be dissipated or lost, a court of equity may direct the disposition of the fund, or make such orders as will tend to secure the same. It will be noticed that while the trustee, Mary Barnstable, has absolute power of disposition, yet she is not entitled to use the proceeds, save for the purpose of reinvestment for herself for life, with remainder at her death to her daughter, etc. She has no right to use the funds for her own support, or otherwise than is directed by the deed. Of course, she has a discretion as to reinvestment, which will not be controlled in the absence of some evidence of fraud, but courts undoubtedly have the right in such cases to make such orders as will secure the proper reinvestment of the funds. What, then, of the evidence relating to the purposes of Mary Barnstable in selling the land, and in securing the proceeds thereof? We shall not set out the evidence in the case. It is enough to state our conclusions. They are that there is danger that Mary Barnstable, unless in some manner controlled by the court, will make such disposition of the funds as that Edith Dickey, the plaintiff, may suffer therefrom. There is testimony which leads us to believe that defendant, Mary Barnstable, unless in some manner restrained by order of court, is likely to convert the funds received from the sale of the

land to Wyatt to her own use, and that she intended when she made the sale to deprive her daughter of her interest in the lands. The purchaser, Wyatt, when he bought the land, had no notice of this, however, and is not bound thereby. Moreover, we should not interfere with the trustee's discretion in the matter of making the sale. She, however, is intending to move out of the state. Indeed, she has already done so. She is without property, other than that which she received under the original deed; and, should she convert these funds plaintiff would be without remedy.

From the entire record, we are led to believe that this is a case where a court of equity is justified in interfering in order to protect the funds derived from the sale. To this end, it is ordered that the case be remanded to the district court for a decree directing Mary Barnstable to give a good and sufficient bond, to be approved by the clerk of the district court, conditioned that she will properly reinvest the funds received from the Wyatt sale in accordance with the terms and conditions of the deed; and that, in the event she fails to do so, the money received from, or to be paid by, Wyatt, be turned over to the clerk of said court; that Mary Barnstable be removed as trustee, and some one else be appointed in her stead, or that she be directed to make such reinvestment of the funds as is satisfactory to the trial court; the details thereof to be provided for in said decree. The voluntary partition of the lands between Richard and Mary Barnstable is also to be approved, and such division of the funds received from the Wyatt sale is to be made as the trial court may deem just and fair. As the case is only reversed in part, we think that each of the parties plaintiff and defendant, save defendant Wyatt, should pay one-half the costs of this appeal.—REVERSED AND REMANDED.