IN RE ESTATE OF ALLEN WALDEN.

INCORPORATED TOWN OF CORYDON, Appellee, v. E. E. POSTON, Administrator, et al., Interveners, Appellants.

**WILLS:** Construction—Discretionary (?) or Absolute (?) Gift to Charity. A provision in a will which *"authorizes and empowers"* an executor, in case a specified, charitable trust fails, to pay a "like sum" to such charitable institutions of a designated nature *"as he may believe to be deserving,"* may, in connection with the will as a whole, clearly demonstrate that testator did not intend that such payment should depend solely on the *discretion* of the executor, but that, on the contrary, he intended to make an *absolute* gift to charity. Will reviewed, and held to make an absolute gift.

*Appeal from Wayne District Court.*—P. C. WINTER, Judge.

DECEMBER 31, 1920.

ACTION against the administrator with will annexed to construe a will, and to have certain funds in his possession declared to pass, under the residuary clause of the will, to plaintiff, and asking an order for the payment thereof to it. The Iowa Children's Home Society, a corporation located at Des Moines, and the American Home Finding Association, a corporation located at Ottumwa, intervened, claiming an interest in the fund in controversy, by designation or appointment of the executor, or by both the executor and administrator with will annexed, under the terms and provisions of the will in controversy. Demurrers to the petitions in intervention and to the written designation of the administrator were sustained, and the administrator was ordered to pay the fund in his hands to plaintiff. Both interveners and the administrator appeal.—*Reversed.*

*Poston & Murrow, Roberts & Webber, Frank T. Roberts,* and *Dunshee & Brody,* for appellants.

*Carter & Bracewell* and *Miles & Steele,* for appellee.

STEVENS, J.—Allen Walden, long a resident of the town of Corydon, Wayne County, Iowa, died, on or about November 6, 1912, testate, possessed of real and personal property of the approximate value of $110,000. Notwithstanding the will is somewhat lengthy, the controversy which involves the interpretation of one paragraph thereof will be better understood and disposed of by setting the will out in full, which we now proceed to do:

"I, Allen Walden, being of sound mind and memory, do make, publish and declare this to be my last will, hereby revoking all wills by me heretofore made.

"First: It is my will that, as soon as practicable after my decease, all of my debts and funeral expenses be paid.

"Second: The greater part of the property which I have acquired has been accumulated while I was in business in, and have been a resident and citizen of, the town of Corydon, Iowa, and which is the result of a long, active business life and the exercise of strict economy. My relations with the people of Corydon and Wayne County have been pleasant, and it is my desire that my property should be so disposed of as to do the most good to the greatest number of its people. I have no family and my nearest relatives are a brother and a sister. Should my sister outlive me, she will need no financial assistance from me, and I shall make provision for my brother, who has already received a large amount of assistance from me and who if he outlives me, will need it in the future. Aside from making provision for him, it is not my desire that any of my property should go to any of my other relatives for reasons which are satisfactory to myself.

"Subject to the above, I will and dispose of my property as follows:

"Third: I desire that my executor set apart the sum of thirty-five thousand ($35,000) dollars, and with said sum purchase sufficient real property in or near the town of Corydon, Iowa, for the purpose of providing for the people one or more public park, or parks, the number and extent of said park or parks to be determined by him. He may also use any of said funds not used for the purchase of said real property for parks, to improve the same, and within a reasonable time thereafter

to convey said property to the town of Corydon, Iowa, on condition that the same be used only for a public park or parks and that said town keep said property in reasonably good condition for said purpose, and that the said park or parks, be forever free to the public and that no part or portion of said property be ever sold, leased, or conveyed in any way to any person for any private use or purpose, my purpose and intention being to provide a public park, or parks, for the use of the general public without expense to it or charge of any kind.

"If the said town of Corydon is unwilling to accept said property on said conditions, then it may be disposed of as other property belonging to my estate.

"Fourth:   I desire that my executor set apart from the other funds belonging to my estate, the sum of thirty thousand ($30,000) dollars to be used by him for the purpose of erecting and establishing a home for orphan and friendless children, in or near the town of Corydon, Iowa, provided, that some other person or persons contribute a like sum for said purpose within three years from and after the probation of this will.  Said home shall not be owned, managed, or controlled by any sect or society, and shall be open to all orphan and friendless children who have a residence in the state of Iowa, but under such reasonable rules and regulations as may be made for its management and control.

"When my executor is satisfied that these conditions have been complied with and that reasonable and proper provisions have been made for its maintenance and permanence in the future, he shall pay to said home the said sum of thirty thousand ($30,000) dollars from my estate.

"If said gift is not accepted, or the conditions imposed not complied with, so that said sum may not be used for the erection and establishment of said home, then I authorize and empower my executor to pay a like sum to such other homes for orphan and friendless children in the state of Iowa as he may believe to be deserving and best able and most likely to use said money for the support, education and maintenance of orphan and friendless children.  The amount which may be paid to any one institution is left to his discretion.

"Fifth:  For the purpose of aiding and assisting the town

of Corydon, Iowa, to procure an adequate and sufficient supply of water for its inhabitants, I authorize my executor to expend the sum of ten thousand ($10,000) dollars, or so much thereof as may be necessary. I prefer to have this money expended, unless a sufficient amount of water is found in the deep well now being sunk by said town, in an effort to find artesian water. If, however, 'a sufficient amount of water is found in the well now being sunk by said town, or if it is evident that no artesian water can be found in this vicinity, then said sum may be expended in improving the water supply of said town either in purchasing real property for a reservoir, or for an addition thereto, or for improving the same.

"Sixth: I direct my executor to expend not exceeding the sum of one thousand ($1,000) dollars, for a monument on my lot in the cemetery at Centerville, Iowa, at which place I desire to be interred after my death.

"Seventh: From the residue and balance of my property after the above sums have been set apart for the purpose therein named, I direct my executor to make suitable provision for the care of my brother, J. K. Walden, during the remainder of his life should he survive me, and it is my desire that he expend for him whatever is necessary for his care and comfort during his life and that at his death he be decently interred at such place as may be designated by him, and that a suitable monument be erected at his grave.

"Eighth: After the death of my brother, J. K. Walden, and all of the obligations provided for in the above have been satisfied, I will and devise all the residue and balance of my property to the town of Corydon, Iowa, to be used for the purpose of extending its sewer, water and electric light systems, or any of them, so that they may reach and benefit the greatest number of its inhabitants. The place where, and the manner of making said extensions shall be determined by my executor and the town council or committee having charge and control of said systems.

"Ninth: If the home for orphan and friendless children should be established as contemplated in this will, my home in Corydon, Iowa, described as follows: Commencing 652 feet west of the northeast corner of the southwest quarter of the south-

west quarter of Section Nineteen (19), Township Sixty-nine (69) Range Twenty-one (21), west of the 5th P. M., thence east 120 feet, thence south to Marion Street; thence west 120 feet, thence north to beginning, may be accepted and used for that purpose at its appraised value; otherwise, it shall be sold and disposed of as any other property belonging to my estate.

"Tenth: The stock owned by me in the Farmers & Merchants State Bank of Corydon, Iowa, shall not be disposed of for three years after this will is probated, but shall be as soon as reasonable after that time has expired.

"Eleventh: I direct my executor to sell and dispose of all of my property, both real and personal, as soon as it is reasonable and practicable to so do, and to use the proceeds thereof for the purpose of paying and discharging the obligations provided for in this will, and said sales may be made without an order of court.

"Twelfth: I nominate and appoint R. C. Poston of Corydon, Iowa, to be my executor and authorize him to sell any of my property without an order of court, and to make any conveyance necessary for carrying out the provisions of this will without first procuring an order of said court."

R. C. Poston, named and designated therein as executor, qualified and served in that capacity until his death, which occurred May 15, 1918. In March prior thereto, he filed an application in the office of the clerk of the district court of Wayne County, in which he represented that he was ill, and unable to properly discharge the duties of executor, and requested the appointment of his son, E. E. Poston, as administrator with will annexed, to assist him, who, he states, "is familiar with the plans of the executor with reference to the carrying out of the provisions of the last will and testament of said Allen Walden, and can, if acting with this executor, facilitate the settlement of said estate and the faithful carrying out of said will." The request of the executor was granted by the court, and E. E. Poston was appointed and qualified as administrator with will annexed.

More than three years having elapsed since the death of testator, the plaintiff commenced this action, alleging in its petition that the provisions of the first paragraph of Item 4

of the will had failed, because the additional sum of $30,000 for the erection of an orphans' home at or near the town of Corydon had not been provided within the time fixed by the will; that R. C. Poston, executor, died without having designated or appointed the orphans' home or homes to receive the $30,000 referred to in the last paragraph of Item 4 of said will; and that same, therefore, became a part of the residue of the estate, and passed under the residuary clause of the will to plaintiff: and prayed as above set forth. A few days after the commencement of this action, E. E. Poston, as administrator with will annexed, filed a written designation and appointment of the American Home Finding Association of Ottumwa and the Iowa Children's Home Society of Des Moines, Iowa, as proper institutions to receive and share equally the fund in controversy, further stating that R. C. Poston orally selected and designated the American Home Finding Association as one of the beneficiaries of said fund.' He further asked that his appointment and designation be approved by the court, and authority given him to make distribution in accordance therewith. Thereafter, the societies above named filed separate petitions in intervention, the former basing its claim to the fund upon the designation and appointment of R. C. Poston, as set forth in the instrument filed by the administrator with will annexed, and also upon the designation and appointment of said administrator, and the latter upon the designation and appointment of it as a beneficiary by the said administrator.

Plaintiff demurred to the instrument filed by the administrator, and to the separate petitions in intervention, upon the grounds that it appeared upon the face of each thereof that no proper designation or appointment was made of either of said interveners by R. C. Poston, and that the administrator with will annexed is wholly without power or authority to make same. The several demurrers were all sustained, and the administrator with will annexed ordered to pay the funds in his hands to plaintiff.

The claim of plaintiff to the fund in controversy rests wholly upon the residuary clause of the will. Its claim is that, by reason of the failure of R. C. Poston to designate the institution or institutions to receive the fund, it passed to and became a

part of the residue of the estate. It is not concerned with any controversy between claimants, or with whether the power conferred by the will upon the executor survived to the administrator with will annexed, or whether, in making the appointment and designation of the beneficiaries, and in disposing of the fund thereto, he is acting as administrator with will annexed, or as trustee of an implied trust. The precise point in the interpretation of the will upon which counsel divide is whether the last paragraph of Item 4 conferred only a mere naked power and authority upon the executor, R. C. Poston, to pay to such homes as should be designated by him any portion of the money therein mentioned, or whether the same constituted a gift to charity, with the power of appointment conferred upon the office of executor, as such, or upon him as trustee, by operation of law. Said paragraph is as follows:

''If said gift is not accepted, or the conditions imposed not complied with, so that said sum may not be used for the erection and establishment of said home, then I authorize and empower my executor to pay a like sum to such other homes for orphan and friendless children in the state of Iowa as he may believe to be deserving and best able and most likely to use said money for the support, education and maintenance of orphan and friendless children. The amount which may be paid to any one institution is left to his discretion.''

The decision of the questions involved must necessarily be based upon familiar rules of law. The chief difficulty arises in the interpretation of the will, and the ascertainment of the intention of the testator, which all parties concede must control. If the selection of the beneficiaries under the clause of the will in controversy was confided solely to R. C. Poston, to be exercised by him in and according to his discretion, then, if he failed to make a selection and appointment, this provision of the will cannot be carried out, and the sum named passed to and became a part of the residue of the estate. *Dickey v. Barnstable,* 122 Iowa 572; *Hodgin v. Toler,* 70 Iowa 21; *Boland v. Tiernay,* 118 Iowa 59; *Ellyson v. Lord,* 124 Iowa 125; *Seeds v. Burk,* 181 Pa. 281 (37 Atl. 511); *Gibbs v. Marsh,* 43 Mass. 243; *Fontain v. Ravenel,* 17 How. 369 (15 L. Ed. 80); *Speer v. Colbert,* 200 U. S. 130 (50 L. Ed. 403); *Hadley v. Hadley,* 147 Ind. 423 (46 N. E.

823); *Brown v. Hobson*, 3 A. K. Marsh (Ky.) 380 (13 Am. Dec. 187); *Gambell v. Trippe*, 75 Md. 252 (23 Atl. 461).

The rule is also familiar that courts of equity look with favor upon all bequests for charitable purposes, and will carry them into effect, if this can be done in harmony with established principles of law. *In re Estate of Johnston*, 141 Iowa 109; *Klumpert v. Vrieland*, 142 Iowa 434; *Chapman v. Newell*, 146 Iowa 415; *In re Estate of Cleven*, 161 Iowa 289; *Wilson v. First Nat. Bank*, 164 Iowa 402; *Beidler v. Dehner*, 178 Iowa 1338.

. Likewise, a trust will not be permitted to fail because the testator has omitted to name a trustee. *Klumpert v. Vrieland*, supra; *Sherlock v. Thompson*, 167 Iowa 1; and cases cited supra. In *Klumpert v. Vrieland*, we held that, where the testator made a bequest to the poor of a specific parish, his design to create a trust through which to administer the fund was implied from the nature of the gift.

Testator was never married, and, as a reading of the will will disclose, aside from the provision contained therein for the care and support during the remainder of his life, and the burial, of an unfortunate brother, made no bequest to relatives. We gather, from the allegations of plaintiff's petition and from the second paragraph of the will, that testator had resided in Corydon for many years, and desired that community to share bountifully in the proceeds of his estate. This is manifest from the bequests made in the first paragraph of the fourth and the eighth item of his will. His desire to benefit all classes, the poor as well as the rich, is expressed in the condition upon which the bequest of $35,000 to Corydon for park purposes is made. He requires that same be kept in reasonably good condition, and so managed as to be forever free to the public, and that same be not sold, leased, or conveyed in any way to any person for a private use. Likewise, his dominant purpose to benefit orphan and friendless children is clearly manifest in both the first and third paragraphs of the fourth item of the will. In the provision first made therefor, he again expressed his desire to confer a favor upon the community, with the business and social' interests of which he had been so long identified. He realized that his desire for the establishment and support of a home for orphan and friendless children near Corydon might not be

fulfilled, because of the failure of those concerned to provide the additional $30,000 required, and, in anticipation thereof, the paragraph in controversy was inserted in the will. To facilitate and encourage the establishment of an orphans' home at or near Corydon, he tendered his home for that purpose, in the ninth paragraph thereof. Following the second paragraph of his will, which is explanatory of his reasons for the bequests that follow, the will recites, "Subject to the above, I will and dispose of my property as follows:"

It is, in substance, alleged, in an amendment to plaintiff's petition, and vigorously urged by counsel for appellee in argument, that the testator and R. C. Poston, designated in the will as executor, for many years sustained intimate personal and business relations; that they were directors in a bank of which Poston was president; that he was the personal attorney and adviser of testator, in whose integrity and discretion he reposed a high degree of confidence; and that it was because of these matters that he authorized and empowered the said Poston in his discretion to pay the sum of $30,000 to certain homes, to be selected and designated by him, "best able and most likely to use said money for the support, education and maintenance of orphan and friendless children;" and that the exercise of power and authority conferred was left wholly to his discretion, and could be exercised by no other person.

It will be observed that none of the usual words of bequest are found in this paragraph of the will. In the first paragraph of the item under consideration, the testator provides for the setting apart of a fund of $30,000 by his executor, to be used by him for the purpose of erecting and establishing an orphans' home in or near Corydon, upon conditions therein stated. In the last paragraph, in the event the former provision is not accepted or carried out, then the executor is authorized and empowered "to pay a like sum" to homes for orphan and friendless children, designated and appointed by him. Much emphasis is given by counsel for appellee to the words "a like sum." While these words must be given significance in ascertaining testator's intention, they are by no means entitled to the dignity of controlling importance. The estate consisted of property, real and personal, of the approximate value of $110,000. By the

other paragraphs of the will, $45,000 in specific sums is bequeathed for the use of, or to the city of Corydon, $1,000 for the erection of a monument at the grave of testator, and an indefinite sum for the care and support of his brother, so long as he should live, and for his burial and the erection of a suitable monument at his grave.

It is, therefore, apparent that the only fund available for carrying out the provision of the paragraph of the will in controversy is the $30,000 set aside by the executor for the establishment and erection of an orphans' home in or near Corydon. The use of the words "a like sum" is common, where two or more separate bequests appear in a will. It is, of course, conceded that but one bequest for the use and benefit of orphan and friendless children was intended by testator. While these words were not, in fact, the equivalent of language specifically designating the $30,000 set aside by the executor as the fund to be used, nevertheless its use for that purpose must have been contemplated by the testator. It was the only fund available for that purpose, if the other specific provisions of the will were carried out. The direction of the testator to the executor is to set apart $35,000 for the procurement and improvement of a park or parks, $30,000 for the erection of an orphans' home, $10,000 to the plaintiff, and $1,000 for the erection of a monument at his grave. The words "I will and dispose of my property as follows" refer necessarily to the subsequent provisions of the will, and were operative to dispose of the sums named, unless a different intention is to be inferred from particular language thereafter employed. Twice in Item 4 the testator clearly manifested a desire to bestow $30,000 of his wealth for the proper support, education, and maintenance of orphan and friendless children. A dominant charitable inclination is thereby clearly indicated. The sole question is: Was it his intention to make an absolute gift to a charitable use, or was the contemplated gift therefor to depend entirely upon the discretion of R. C. Poston? The rule that gifts to charitable uses appeal to the favor of courts, and will be given effect if consistent with law, and that "to such ends the most liberal rules within the allowable limits of chancery jurisdiction will be resorted to," if necessary, has often been declared by this court. The word

"executor" appears many times in the will. The name of R. C. Poston appears only in the twelfth paragraph, in which he is designated as executor, and authorized to sell the property of the estate, without authority of court, in order to make provision for carrying out the terms of the will. He is not, however, permitted to serve without bond.

There is nothing in the language of the clause in controversy to indicate a desire to avoid the operative effect of the words quoted above, nor do we find therein any clear expression of an intention to confer a mere naked power upon R. C. Poston. The specific discretion mentioned relates only to the apportionment of the amount among the homes selected. It seems to us that the intention of the testator was to make a gift of $30,000 for the use and benefit of homeless and friendless orphan children, and that same is not dependent upon the discretion of Poston. Had he desired that the matter should be left entirely to Poston's discretion, the writer of the instrument, who, all claim, was eminently qualified to prepare the document, would doubtless have so stated, in unmistakable terms. Homes of the character designated are not numerous in Iowa, and we perceive no reason why any other person than R. C. Poston, under the direction of the court, may not make the appointment fully as well. If the will by its terms made the gift depend upon the judgment and discretion of Poston, and he failed to exercise such discretion, then, of course, the provision failed. If, however, it was the intention of testator to make a gift for charitable purposes, and only the power of appointment was conferred upon Poston, then his mere failure to act does not defeat the gift.

It is our conclusion, gathered from the whole instrument, that the testator intended to make a gift of $30,000 to charity, and that its taking effect did not depend upon the exercise of a discretion confided to R. C. Poston. It is unnecessary at this time for the court to determine whether the fund passed to the executor, with power to make the appointment, or whether it survived to the administrator with will annexed, or whether the executor, by operation of law, became trustee of an implied trust, with power to make the appointment, or whether the administrator with will annexed, or some other suitable person, should

be appointed as trustee to carry out the provisions of the will. These are matters in which plaintiff has no interest. As all of the real estate was converted into personalty by the executor, and there is no controversy involving title to real estate conveyed, or as to liability of sureties upon the bond of the executor or administrator with will annexed, the question as to the exact capacity in which the executor received and held the fund, or in which same is now held by the administrator with will annexed, is, perhaps, of little practical importance. The order of the court below, directing the administrator to pay the funds in his hands to plaintiff, was based upon its holding that the clause of the will in question could not be given effect, and that, therefore, the fund necessarily passed to the residue of the estate. It is also unnecessary to pass upon the contention of counsel for the Ottumwa corporation that it was, in fact, designated by R. C. Poston as a beneficiary. All of these questions remain for future disposition in the court below. As the fund did not, by the failure of R. C. Poston to select or designate a beneficiary to receive the gift, become a part of the residue of the estate, plaintiff has no interest therein.

It follows from what is said above that the ruling and judgment of the court upon the several demurrers is reversed, and the order directing the payment of the fund to plaintiff by the administrator is vacated.—*Reversed.*

WEAVER, C. J., LADD and ARTHUR, JJ., concur.